HOPE V. CAREY *vs.* JOSEPH P. CLARK, C. T.

JANUARY 21, 1955.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

414

Flynn, C. J. This is an action in indebitatus assumpsit brought by the plaintiff to recover from the defendant a sum of money allegedly due her under a state educational grant. The case was heard by a justice of the superior court sitting without a jury and a decision was rendered in favor of the plaintiff for $1,225 with legal interest thereon from the date of the writ. The case is here on the defendant's bill of exceptions to such decision.

It appears that plaintiff has been employed as a teacher in the public school system in the city of Pawtucket since September 1944. After negotiations between the school committee of that city and representatives of the Pawtucket Teachers' Alliance, hereinafter referred to as the Alliance, a contract was executed by the parties on December 27, 1946 to become effective January 1, 1947. The agreement is entitled "Agreement Of The $1800 to $4,000 Salary Schedule Adopted By The Pawtucket Teachers' Alliance And The Pawtucket School Committee." Many of its eighteen paragraphs are not relevant, but the following paragraphs will assist in understanding the issue in the present case.

> "1. Basic salary of all teachers, men and women, including permanent substitutes, shall be not less than $1800 per annum effective January 1, 1947.

2. Every teacher in the system shall receive, effective Jan. 1, 1947, an increase of $350 payable over the 38 week pay period of the school year, except that group whose salary is now less than $1450 per annum. Those whose salaries are now less than $1450 shall be immediately raised to the base of $1800.

3. Every teacher in the system shall receive, on Jan. 1, 1948, an increase of $350.

a. On Jan. 1 of each succeeding year, the salary of each teacher shall be increased by $350 until such time as the salary of that teacher shall equal the salary in the Alliance adjustment schedule for that year; except that if $350 makes the salary exceed the figure in the schedule, the increase shall be that portion of $350 necessary to equal the figure in the schedule, and $200 a year on each Jan. 1 thereafter until the $4000 base is reached. .

4. Any aid from the State of Rhode Island shall be added to the salaries in effect after the adjustments of paragraphs 1 and 2, provided that such State aid is payable during 1947.

5. If the State aid becomes payable in 1948, then it shall be added to the salaries in effect after the adjustments of paragraphs 1, 2, and 3.

6. The base salary shall be $1800 as stated in paragraph 1 and State aid shall not affect the base.

7. The maximum base salary of all teachers shall be $4,000 except as provided in paragraph 8; State aid shall be included in the maximum and shall serve to accelerate the approach to the maximum.

\* \* \*

16. The Alliance adjustment schedule mentioned in paragraph 3a is the schedule attached to this agreement and is made a part thereof."

The adjustment schedule referred to was prepared by the Alliance and shows a table of pay classifications in accordance with which certain yearly increases to qualified salaried groups would be payable between 1947 and 1956, at which time the agreed maximum salary would be reached.

At the time the above contract was entered into no actual

state aid had been provided. However, in their negotiations the contracting parties considered it and expressly provided for its application to certain terms of the contract if such aid were granted and made payable in 1947 and 1948. Subsequently chapter 1887 of the public laws of 1947 was approved on May 28 to become effective July 1, 1947, and article IX entitled "State Grants, Etc.," contained in part the following provisions:

"Part 1.

Section 1. Public education is hereby declared to be one of the chief responsibilities of the state. Part 1 of this article is designed to maintain and improve existing standards of public education in Rhode Island; to attract and encourage qualified persons to enter into and remain in the profession of teaching in the public schools and generally to secure and promote the present and future educational welfare of the children attending public schools in this state.

Sec. 2. The general assembly shall annually appropriate a sum sufficient to pay every teacher who is regularly employed in the public schools of every city and town in the state a permanent annual salary grant at the rate of six hundred ($600) dollars per year; provided however that no grant made under the provisions of this article shall serve to bring the salary of any teacher to an amount in excess of $5,000.00 per annum. This grant shall be in addition to any and all amounts being paid to such teacher by any city or town as of the date of the passage hereof as compensation or salary for teaching services. * * * This appropriation shall be known as the annual state salary grant for teachers. * * * The amounts so apportioned and paid shall be earmarked for the purposes specified in this section and shall be disbursed to the teachers upon the order of the school committee of the cities and towns. No part of the funds so apportioned and paid shall be used for the purpose of paying increases in compensation or salaries for teaching services that have or may hereafter be granted to teachers by the school committee of any city or town. * * *

Sec. 3. The first grant made under part 1 of this article shall be for the school year of 1947-1948."

The plaintiff makes no contention that prior to January 1, 1949 such state grant was not properly disbursed and paid to her by the city. Nor is the question as to plaintiff's right to challenge the contract independently of the Alliance, the teachers' bargaining agent, raised, considered or decided. But it is plaintiff's general claim that the statute makes an annual *absolute* grant to each teacher of $600 payable through the city as trustee or agent for the teachers; that beginning January 1, 1949 the city of Pawtucket failed to pay and disburse to her the full amount of such annual grant; and that from and after that date increasingly large portions thereof were annually withheld from her wrongfully and are now overdue.

In general defendant argues that the statute did not provide an absolute grant to the teachers to the extent claimed by plaintiff but was qualified by provisions of P. L. 1947, chap. 1887, article IX; that it was intended to assist the cities and towns in their financial crises and to assure to teachers a minimum *base* salary in order to attract them to the service; that it was the kind of "state aid" anticipated and provided for in the contract between the school committee and the Alliance; that by the statute the salary grant is keyed to the base salary of the teacher as it appeared on the date of the passage of the act; and that the trial justice misconceived or misapplied the law, since at all times plaintiff received her base salary plus the grant of $600 without diminution in accordance with the provisions of the statute.

It seems clear from the above contentions that the questions raised must be determined *primarily* by an examination and construction of the statute, and secondarily by a consideration of the statute together with the agreement of the parties.

The plaintiff's contentions, as we understand them, are

essentially based on the claim that the statute in question is clear and unequivocal and must be construed to mean (a) that the state thereby made an *absolute* annual grant to each teacher; (b) that such grant was not "state aid" to the city in any form; (c) that it must be earmarked by the city as trustee for the teacher; (d) that it could not be used by the city *in any way* in reference to the teacher's total compensation or salary increases; and (e) that regardless of the teacher's total compensation and status under the bargaining contract, the city must pay it over to the teacher as an absolute grant *after* first having added to her base salary all the increases due at any future time in accordance with the schedules in the contract.

We cannot agree with such construction or with all her contentions for the following reasons. First, there is nothing in article IX, part 1, section 1, or elsewhere in the statute which expressly or by necessary implication requires plaintiff's extreme construction. Second, the provisions of the statute at all times expressly refer to the apportionment as an annual "salary grant" and *not* as an "absolute grant" that is wholly independent of compensation or increases in salaries to teachers under the contract, as contended by plaintiff. Third, one of the provisions in section 2 by clear implication permits the salary grant of $600 per year to serve in a way that would help to bring the salary of any teacher up to, but not in excess of, $5,000 per annum. Fourth, the amount of the grant is payable only to teachers who are *regularly employed,* as shown by certifications by the city to the state director of education. Fifth, the grants are disbursed by the state *only* upon the order of the school committee of the city for services actually rendered. Neither of the last two requirements would be necessary if the legislature intended an absolute grant to teachers irrespective of the effect on their earnings and contract status. Sixth, in part 2, section 1, of the same article, under the heading "Distribution of Increased State Aid," the legis-

lature referred to the appropriation as "State aid to cities and towns * * *." And seventh, in part 3, section 1, the legislature expressly clarifies the nature of the previously-mentioned salary grant by stating: "The recognition of the state of its obligation *to grant pay increases for teachers* in the manner herein above provided, to assure the maintenance of proper educational standards in the public schools, coupled with the compelling necessity for *additional state aid to the several cities and towns,* now confronted with financial crises * * *." (italics ours)

Such provisions as to "salary grant" and references to "additional state aid to the several cities and towns" and to other requirements related to actual services, which would be wholly unnecessary if an absolute grant were intended for each teacher, cannot be ignored in seeking the legislative intent. In view of such specific provisions we cannot agree that the intent of the legislature is unequivocally clear in the sense asserted by plaintiff, or that the statute must be construed and applied in all respects as she contends.

The plaintiff, in order to establish the alleged absolute character of the grant, relies largely if not entirely on two sentences of the statute. These are selected from part 1, sec. 2, and are read by plaintiff literally and apart from other provisions of the same section. The first sentence provides that the state salary grant "shall be in addition to any and all amounts being paid to such teacher by any city or town as of the date of the passage hereof as compensation or salary for teaching services." In this connection, however, plaintiff overlooks the fact that this sentence follows immediately a provision impliedly permitting use of the grant in computing increases but not so as to exceed $5,000, which is not consistent with plaintiff's construction. She also ignores the plain fact that the sentence relied on expressly directs the amount of the grant to be added to the salary being paid *as of the date of the passage of the act.*

Clearly that provision is qualified and does not establish that the state grant is absolute to the teachers as plaintiff contends.

Nor does it require the construction implicit in plaintiff's argument. No provision, directly or indirectly, requires the amount of the grant to be in addition to the total compensation being received by a teacher at all times subsequent to the date of the statute. In other words the sentence does not say that the state salary grant shall be in addition to the total amount of compensation that may be paid to such teacher in the future after successive contractual increases have been first computed and then added to her base salary. On the contrary, the grant is expressly to be added to all amounts "being paid to such teacher by any city or town as of the date of the passage" of the statute.

In our judgment such provision merely requires that the grant is additional to the base salary of teachers and that such salary is fixed by the statute as the compensation being paid for teaching services *as of the date of the passage of the statute*. Any other or subsequent increases would depend entirely on the particular provisions of any teacher's agreement. In the instant case this would be the contract entered into by the school committee and the Alliance on December 27, 1946.

Nor does the other sentence chiefly relied on by plaintiff require the construction for which she contends. It reads: "No part of the funds so apportioned and paid shall be used for the purpose of paying increases in compensation or salaries for teaching services that have or may hereafter be granted to teachers by the school committee of any city or town." This is also in section 2 and merely relates back to the sentence or provision above discussed. The increases referred to in this second sentence are any increases over and above the base salary which has already been fixed as of the time the statute was passed. Such further increases may not be paid out of the state grant and the city does

not claim that right. It is undisputed that plaintiff's salary, by virtue of increases provided by the contract was $1,800 *at the time of the passage of the statute.* That amount therefore was fixed as plaintiff's statutory base salary. Thereafter according to the provisions of the statute here under consideration she was entitled to receive a salary grant of $600 in addition to her base pay of $1,800, thus making $2,400 as her total compensation for teacher's services.

If any annual increases over and above such $2,400 might accrue after the passage of the statute by virtue of any prior or subsequent agreement between the school committee and the Alliance, none of such increases could be paid out of the grant of $600. In other words, according to the statutory formula, plaintiff at all times must receive her base pay of $1,800 plus $600, the statutory salary grant, and any further increases if claimed by her must be governed by the school committee's contract with the Alliance.

Moreover, the construction of the two above-mentioned sentences relied on by plaintiff would develop some inconsistencies with certain other provisions of the statute. It is well established under canons of statutory construction that we should give effect to all parts of the statute, if reasonably possible, in keeping with its declared purpose. *McLaughlin* v. *Dunlop,* 68 R. I. 4; *Carty* v. *American Mutual Liability Ins. Co.,* 70 R. I. 472; *Nolan* v. *Representative Council,* 73 R. I. 498. By adopting the construction advocated by the city all provisions can be given such reasonable effect. Therefore we conclude that the language of the statute as a whole does not establish unequivocally an absolute grant as urged by her but is at best ambiguous; that the two provisions chiefly relied on by her to support such contention should be considered and reasonably applied with all other provisions of the statute; that so considered it shows that the legislature intended a "salary grant" in the form of "state aid to the several cities and towns" to be

earmarked and used solely for teaching services and was to be added to the *base* salary being received by the teacher *as of the date of the passage of the statute;* that thereby the total pay or compensation received by the teacher for such teaching services would be substantially increased; and that after such addition *as of that date* the $600 grant may not be diverted to other purposes or used by the city *to pay* any further and future increases that might accrue solely under the teachers' contract.

Therefore, the only remaining question based on the statute, if considered alone, is whether plaintiff actually received annually $600 more than her base salary as it was fixed at the time the statute was passed. According to the undisputed evidence, she has received annually since the effective date of the statute an amount at the rate of at least $600 more than her base salary was at the time the statute was passed. Therefore we are of the opinion that the city did not withhold from her any part of this statutory salary grant and that none of such grant is now in the hands of the city. Therefore under the statute when considered alone plaintiff could not recover in this action which was essentially for money had and received.

But the plaintiff goes further. She studiously avoids claiming a breach by the city of the teachers' contract but attempts to strengthen the above-mentioned contentions as to the statute by considering its provisions in connection with parts of the contract. In this argument she ingeniously uses the contract at times when it serves her purpose and omits some of the provisions thereof whenever their inclusion would be to her disadvantage. For example, the contract was entered into before the statute was passed. However, both parties anticipated that state aid might be granted in connection with salary increases to teachers. Therefore they specifically included provisions setting up a control schedule to govern the "step rate" increases in teachers' salaries. They also included provisions, particu-

larly those numbered 4, 5, 6 and 7, which dealt more particularly with the use and application of any "state aid" which might be granted by a subsequent statute if it was to be made payable in 1947 or 1948.

Paragraph 7 of the contract specifically provides that such "state aid" shall be included in the maximum and shall serve to accelerate the approach thereto. And by paragraphs 4 and 5 any aid from the state shall be added to the salaries in effect after the adjustments of paragraphs 1 and 2, or 1, 2 and 3, as the case might be. These adjustments substantially conform to the terms of the statute as to the base salary in effect at the time of the passage thereof. The plaintiff, however, argues that the statutory grant is not the "state aid" for cities as mentioned and applied in the contract. According to her such provisions are inconsistent with the nature of the absolute grant in the statute and the parties could not contract themselves out of such legal obligations.

This argument first assumes that the statute was an absolute grant, which we have rejected as above set forth. And it also would permit plaintiff to strike out all provisions of the contract where they do not serve her present argument, while holding the city to performance of the other contractual obligations as to scheduled increases. This is done even though the provisions are equally express and integrated in a contract mutually agreed upon by the parties thereto.

In our opinion if the contract is to be relied on at all—and plaintiff must rely on it to get more than $2,400—it must be applied in its entirety by giving effect to all its provisions, since it is a mutual obligation. It is significant to note that the witnesses who represented the state in administering the statutory grant as well as those representing the immediate parties to the contract, the school committee and the Alliance, all agree that the school committee's computation and the city's disbursement of the grant in

424

connection with the contract was in accordance with the intent of the statute and their agreement.

If the contract and the statute are properly considered together, we reach the conclusion that plaintiff was receiving under the contract a salary of $1,800 *at the time the statute was passed;* that by the terms of the statute and the contract such salary was therefore fixed as her base salary; and that the statutory grant of $600 must be added thereto, thereby requiring the city to pay her at least a total compensation of $2,400 every school year served by her beginning September 1947. In addition the school committee and the Alliance apparently used such *total compensation* as a standard to compute whether plaintiff would be entitled to still further sums in the future under the schedules adopted in the contract. This is far from deducting any part of the grant to *pay* increases that might accrue after the passage of the statute.

From our examination of the statute we have found no provision which directly or indirectly prohibits the school committee and the Alliance from entering into a contract whereby they would use such teacher's total compensation, that is, the base salary plus the statutory grant, as an agreed standard to compute whether plaintiff was entitled to any subsequent increases under the contract. Clearly it is one thing to provide that certain subsequent increases may not be *paid* out of a state grant and another to prohibit the school committee and the Alliance from using *total compensation* being received on a fixed date as a standard to compute whether the teacher was entitled to further increases beyond such grant at some *future* time in accordance with certain adopted schedules in the mutual contract.

If we hold that the statute prohibited a school committee from entering into such a contract, there would be no contractual increases for plaintiff to add to her base salary after the passage of the act. On the other hand, if the contract is to be applied in conjunction with the statute, she may not strike out some provisions wherever they

conflict with her contention and yet require the city to be bound by the others regardless of the fact that all provisions were part of the contract agreed upon by the parties. So considered, she admittedly has received at least $600 over and above such base salary each school year after the passage of the statute.

At any rate, even if it can be assumed that there might be a deficiency in her total compensation from all sources we are of the opinion that it is not due to the failure to receive all the grant as we construe the statute and the evidence. Such deficiency, if any, would have to be under some alleged breach of the contract. But a breach thereof is disclaimed by the plaintiff in her argument and is not claimed here by any of the immediate parties thereto.

The defendant's exception is sustained, the decision is reversed, and the case is remitted to the superior court for entry of a decision for the defendant.

BAKER, J., concurs in the result.

## ON MOTION FOR REARGUMENT.

### MARCH 7, 1955.

PER CURIAM. After our decision in the above case the plaintiff requested and received permission to file a motion for reargument. Accordingly such motion was filed and it sets forth in some detail several reasons why she believes we should reverse or alter our opinion and not remit the case to the superior court for entry of judgment for the defendant.

Most of these reasons repeat, either directly or indirectly, the arguments which plaintiff strongly advanced at the hearing on the merits of the defendant's exception. These were considered fully by us before the filing of our opinion. However, certain other reasons are new or at least are now presented more precisely and somewhat differently than they were at such hearing. In the circumstances, therefore, we have re-examined the opinion in the light of all the grounds and reasons now presented by plaintiff.

After careful consideration of the grounds in the motion for reargument as fully as if they were presented as reasons which would have been urged if the case were now being heard by us on a show cause order under general laws 1938, chapter 542, §10, we are not persuaded that they warrant a change in our construction of the statute as of the time it was enacted. Nor do we think that on such grounds and reasons we should reverse our decision or alter the order therein remitting the case to the superior court for entry of judgment for the defendant.

Motion denied.

*Corcoran, Foley & Flynn, Francis R. Foley,* for plaintiff.

*J. Frederick Murphy,* City Solicitor, *Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.