263 A.2d 681.

MARIO COLETTA *vs.* STATE OF RHODE ISLAND.

APRIL 2, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is an original petition for workmen's compensation benefits for total disability compensation, medical benefits, and specific compensation for the loss of an eye. The case was heard before the trial commissioner on an agreed statement of facts. The trial commissioner entered a decree awarding the petitioner the relief sought, but provided in order No. 5 of the decree that the respondent was to be given credit, under G. L. 1956 (1968 Reenactment) §28-31-11, for any payment made to the petitioner by the federal government in the form of pay, subsistence, hospitalization or any other benefits. After hearing the petitioner's appeal therefrom, the full commission entered a decree affirming the findings and orders contained in the decree of the trial commissioner, but with a modification of order No. 5 therein. The cause is now before us on the petitioner's appeal from the final decree of the full commission.

The pertinent facts are as follows. On April 30, 1966, petitioner, a staff sergeant in the Rhode Island State Army National Guard, was on duty with his unit at Camp Edwards, Massachusetts. While supervising a policing detail as part of his required duties, he sustained severe personal injuries when a rocket mortar shell exploded not far from where he was standing. He was removed to a nearby hospital at Otis Air Force Base, Massachusetts, and later to the United States Naval Hospital at Chelsea, Massachusetts, where he was immediately federalized and transferred from inactive duty National Guard status to regular active duty as a staff sergeant in the United States Army. As a result of such transfer, he was entitled to and did receive from the United States Government on a monthly basis his regular army pay, subsistence allowance and quarters allowance allotment for his wife. In addition, he received from the federal government, as a member of the armed forces, necessary medical and surgical attention and treatment including hospitalization at the Naval Hospital at Chelsea.

On November 1, 1966, while hospitalized in the Naval Hospital at Chelsea, he suffered the removal and irrevocable loss of his left eye by enucleation. At the time of his injury his average weekly income from his civilian employment, the ownership and operation of a retail gasoline service station in Providence, was $125.

The decree entered by the trial commissioner contains findings, based on the agreed statement of facts, describing petitioner's injuries and how the incident causing them occurred. In addition it contains findings that the injuries sustained arose out of and were in the course of his employment with respondent, and were connected therewith and referable thereto; that respondent had knowledge of the injuries; that as a result of such injuries petitioner was totally incapacitated for work from May 1, 1966 to July 31, 1967, and from October 6, 1967, and continuing; and

that as a further result of the injuries petitioner had suffered the complete and irrevocable loss of use of his left eye. The decree contains the following orders: (1) that respondent pay to petitioner total compensation benefits at the rate of $45 per week during total incapacity; (2) that respondent also pay to petitioner compensation for the loss of his left eye in the total amount of $4,800, representing 160 weeks compensation at the rate of $30 per week, said compensation to commence as of May 1, 1966; (3) that respondent pay all reasonable medical and hospital bills incurred by petitioner in accordance with the Workmen's Compensation Act; (4) that respondent pay petitioner's attorney a counsel fee of $150; (5) that respondent be given credit for any payment made to petitioner by the federal government in the form of pay, subsistence, hospitalization or any other benefits.

The petitioner's appeal to the full commission challenged the correctness of order No. 5 in the trial commissioner's decree. In their decree the full commission affirmed all the findings of the trial commissioner, and denied and dismissed petitioner's appeal. They also affirmed all the orders of the trial commissioner, but amended order No. 5 in the trial commissioner's decree to read as follows:

> "In any weeks during which the petitioner receives from the United States pay, subsistence, hospitalization or other benefits, the respondent shall be entitled to credit to the extent of such weekly payments against the amounts ordered paid by Order No. 1, and Order No. 2, of this decree."

The only issue raised by this appeal is whether, under §28-31-11, respondent is entitled to any credit or setoff for payments made to petitioner by the United States Government.

The petitioner makes two main points. The first is that

he is entitled to all the benefits provided under §28-33-17,[1] as amended by P. L. 1963, chap. 45, sec. 1, and §28-33-19(d),[2] as amended by P. L. 1963, chap. 50, sec. 1, of the Workmen's Compensation Act, because §28-31-9 (1968 Reenactment), entitles members of the National Guard and Rhode Island State Guard to all of the benefits of the act[3] and §28-31-11 places no limitation on petitioner's right to receive such benefits.[4] His second argument is that, even if we conclude that §28-31-11 applies to benefits received as regular compensation for total incapacity under §28-33-17, it is not applicable to specific compensation benefits for scheduled injuries to which he is entitled under §28-33-19(d).

Initially we address ourselves to the question of whether §28-31-11 allows respondent a credit or setoff for the payments made to petitioner by the federal government against

---

[1]Section 28-33-17 deals with the benefits payable as weekly compensation for total incapacity and for permanent total disability payments.

[2]Section 28-33-19 is the section of the statute which provides additional compensation for specific injuries.

[3]Section 28-31-9 reads as follows:
"Application to national and state guardsmen.—Members of the national guard and Rhode Island state guard hereafter injured in the performance of required, authorized or permitted duty, shall be deemed to be employees of the state, and shall be entitled to all the benefits of chapters 29 to 38, inclusive, of this title in accordance with the limitations, requirements and restrictions thereof."

[4]Section 28-31-11 reads as follows:
"Effect of federal benefits to guardsmen.—Where an injured member of the national guard or the Rhode Island state guard receives pay, subsistence, hospitalization, or other benefits from the United States as the result of such injury, such payments shall not affect his right to receive compensation under chapters 29 to 38, inclusive, of this title. When the payments received from the United States are less than he would have been entitled to receive under said chapters, then he shall be entitled to receive all the benefits to which he would have been entitled under said chapters less the benefits actually received from the United States."

regular compensation benefits to which the petitioner is entitled under §28-33-17.

The second sentence of §28-31-11 reads:

"When the payments received from the United States are *less* than he would have been entitled to receive under said chapters, then he shall be entitled to receive all the benefits to which he would have been entitled under said chapters less the benefits actually received from the United States." (Italics supplied.)

This sentence states that benefits actually received from the United States are to be used as a setoff or credit in determining what compensation is to be paid for total disability benefits only when such federal payments are less than those petitioner is entitled to receive under chapters 29 to 38. The facts in the present case are that petitioner is receiving *more* from the United States ($119.08 per week) than he would be entitled to receive under chapters 29 to 38 ($45 per week). An argument could be made that the facts of the present case do not fall within a literal application of the second sentence of §28-31-11, and therefore there is no setoff or credit. However, such a literal application would lead to absurd or unreasonable results,[5] and it is presumed that the legislature did not intend to enact a statute whose application would so lead. See *Genereux* v. *Pelosi*, 96 R. I. 452, 192 A.2d 630; *State* v. *Haggerty*, 89 R. I. 158, 151 A.2d 382. See also 82 C.J.S. *Statutes*, §§316, 325. No reason is apparent, nor advanced by the parties,

---

[5]The absurd or unreasonable consequences of a literal application of the second sentence of §28-31-11 are abundantly clear in the following illustration:

| If Payment from United States is: | and | If Amount Entitled to Under Chaps. 29 to 38 is: | then | Amount Paid in Workmen's Comp. |
|---|---|---|---|---|
| $44/week | | $45/week | | Credit. ($45-$44 = $1) $1 paid. |
| $46/week | | $45/week | | No Credit. $45 paid. |

why the credit or setoff should apply only when the United States' payments are less and not apply when they are equal to or greater. The clear legislative intent seems to have been to provide for a credit or setoff generally when there are United States' payments being received, while at the same time to guarantee that petitioner should receive at least that which he is entitled to under chaps. 29 to 38.

The petitioner argues that the statute should be liberally construed citing *Carpenter* v. *Globe Indemnity Co.*, 65 R. I. 194, 14 A.2d 235, and that, being a remedial statute, should be construed in favor of the employee, citing *Hingeco Mfg. Co.* v. *Haglund*, 65 R. I. 218, 14 A.2d 233. However, no construction, particularly of a remedial statute, should be adopted which would defeat its evident purpose. *Condon* v. *First National Stores, Inc.*, 65 R. I. 129, 13 A.2d 684. And the Workmen's Compensation Act should not be liberally construed where to do so would defeat a clear legislative intent. *Craven* v. *United States Rubber Co.*, 103 R. I. 126, 235 A.2d 85. Section 28-31-11 evidences a clear legislative intent to limit the regular compensation payments to which petitioner is entitled under §28-33-17.

The petitioner's argument that §28-31-11 should not be construed in a vacuum, but should rather be read in the context of the entire act and especially §28-33-21[6] (1968 Reenactment), does not help his position, since it is well

---

[6]Section 28-33-21 reads:

"Savings or other insurance not to be considered.—No savings or insurance of the injured employee, independent of chapters 29 to 38, inclusive, of this title, shall be taken into consideration in determining the compensation to be paid hereunder, nor shall benefits derived from any other source than the employer be considered in fixing the compensation under said chapters. Any employer who shall refuse or delay payment under said chapters on account of the receipt by any injured employee of such savings, insurance or benefits, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be liable to a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or imprisonment not exceeding one (1) year, or both."

established that, where two provisions of a statute seem to conflict, they should be construed, if reasonably possible, so as to give effect to both. See *Carey* v. *Clark,* 82 R. I. 412, 111 A.2d 238, *reargument denied,* 82 R. I. 425, 112 A.2d 201; *McLaughlin* v. *Dunlop,* 68 R. I. 4, 26 A.2d 3.

The petitioner's second point presents a different question. We believe there is merit to petitioner's contention that §28-31-11 does not authorize respondent to credit or setoff payments received from the federal government against the weekly payments to which petitioner is entitled for specific compensation for the loss of his eye. The respondent argues that the word "benefits" as used in the second sentence of §28-31-11 is used in the generic sense and thus discloses a legislative intent to include both disability compensation benefits and specific compensation benefits as elements of the credit or setoff. There might be some merit to respondent's argument were it not for the fact that there is a substantive difference between regular compensation and compensation for specific injuries.

Under our act regular compensation is paid only for incapacity resulting in loss of earnings and not for the injury itself. *Nunes* v. *Davol Rubber Co.,* 87 R. I. 271, 140 A.2d 272; *United Wire & Supply Corp.* v. *Frenier,* 87 R. I. 31, 137 A.2d 414. But the provision of our statute for specific compensation is in no way dependent upon the injured workman's incapacity to work. If he suffers a specific loss, as scheduled in §28-33-19, he is entitled to specific compensation for that loss regardless of his incapacity for work. Such compensation is more in the nature of damages for each specific loss. *Steele* v. *Darlington Fabrics Corp.,* 78 R. I. 272, 275, 81 A.2d 424, 426. The legislature is presumed to have knowledge of the interpretation of its legislative acts by this court. See *Santanelli* v. *City of Providence,* 105 R. I. 208, 250 A.2d 849; *Sampson* v. *Sampson,* 16 R. I. 456, 16 A. 711.

The language of §28-31-11 does not indicate a clear legislative intent to limit petitioner's right to additional payments for specific compensation by authorizing the respondent to credit or setoff benefits received from the federal government against payments for specific compensation. The statute is ambiguous in this regard and, therefore, must be construed liberally in favor of the employee. *Long* v. *Gorham Corp.*, 100 R. I. 711, 219 A.2d 214; *Hingeco Mfg. Co.* v. *Haglund, supra; Carpenter* v. *Globe Indemnity Co.*, *supra.* If the legislature intended to give the state the authority to credit payments received from the federal government and set them off against payments given to petitioner for specific compensation, it could have provided for such a contingency by expressly referring to such payments. Since the legislature failed to do so, we conclude that it did not intend such a result.

We hold that the second sentence in §28-31-11 authorizes the state to credit payments received from the federal government and to set them off against the regular compensation benefits to which petitioner is entitled under §28-33-17, but that no credit or setoff is authorized against compensation payments to which petitoner is entitled for specific compensation under §28-33-19(d). Order No. 5 in the final decree is therefore erroneous and must be modified in accordance with this opinion.

Since the petitioner has been partially successful in prosecuting the instant petition before us, he is entitled to an award for counsel fees. *Tirocchi* v. *United States Rubber Co.*, 102 R. I. 617, 232 A.2d 593; *Palumbo* v. *United States Rubber Co.*, 102 R. I. 220, 229 A.2d 620. Accordingly, he may present a motion for the award of a counsel fee in accordance with this court's provisional order No. 5.

The petitioner's appeal is sustained as to order No. 5 in the final decree of the full commission; otherwise the decree appealed from is affirmed, and the cause is remanded to the

Workmen's Compensation Commission for modification of order No. 5 and for further proceedings in accordance with this opinion.

*B. Lucius Zarlenga,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *W. Slater Allen, Jr.,* Assistant Attorney General, for respondent.