STATE

v.

**Aram K. BERBERIAN.**

No. 82-38-C.A.

Supreme Court of Rhode Island.

April 26, 1983.

Dennis J. Roberts, II, Atty. Gen., Michael Joseph McEntee, Sp. Asst. Atty. Gen., for plaintiff.

Frederick G. Cass, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of conviction entered in the Superior Court upon an information that charged the defendant with two counts of threatening to place a bomb or other explosive in a public building in violation of G.L. 1956 (1981 Reenactment) § 11–13–9. After a jury verdict finding the defendant guilty on both counts, suspended sentences were imposed and the defendant was placed on probation for a period of five years. The defendant filed a timely notice of appeal. The facts of the case, in most instances undisputed, are as follows.

The defendant has been a member of the bar of this state for approximately thirty-one years. On October 8, 1980, defendant delivered to William R. Habershaw (Habershaw), a member of the capitol police at the Kent County Courthouse, a copy of a letter that was introduced into evidence during the trial and contained the following statement:

"Frank A. Carter, Jr., Esquire
Providence County Supreme Court
250 Benefit Street
Providence, R.I. 02903

"Dear Brother Carter:

"On 15 October 1980 I intend to present to the Security Officers at the Kent County Courthouse a hand grenade which I will have smuggled into the courthouse. Since you have evidenced an interest in the subject matter, would you care to be present when I make the presentation? If so, I would be pleased to telephone to you the proper time.

"I have already informed Officer Keagan of my intention so that he would have ready appropriate medication for his heart.

"Yours truly,

"Aram K. Berberian"

The original letter was mailed to Frank Carter, Jr., who was serving as disciplinary counsel for the Supreme Court of this state. Another copy of the letter was given to the clerk of the Superior Court and an additional copy was posted on the bulletin board of the Kent County Courthouse. The defendant admitted writing and delivering this letter. He asserted, however, that the portion of the letter that referred to "Officer Keagan" was meant as a joke.[1] According to defendant, "Keagan" was really a police officer named Comstock who had no heart condition.

After receiving the letter on October 8, Habershaw notified his chief, James H. Dodd (Dodd). Dodd had known defendant

for fifteen or twenty years, and there had been many disputes between them, including litigation brought against Dodd by defendant in respect to metal detectors which had been placed in the various courthouses in this state. The defendant had also sued Dodd for false arrest arising out of an incident one and one half years previous to the incident in the case at bar when defendant had brought a simulated .45 caliber pistol into the Superior Court. Dodd received a copy of the letter delivered to Habershaw.

On October 15, the date set forth in the letter, Dodd was present at the Kent County Courthouse and was seated in the cafeteria with Officer Montanari and Frank Sylvia, the court security officer. A conversation then ensued in which, according to the state's witnesses, Mr. Berberian said:

"Gee, today is the 15th, I forgot I was supposed to bring a hand grenade into the building today. Give me a few minutes, I will go and get it. I have some business in Judge DeCiantis' courtroom."

This statement was relied upon by the state in support of the second count of the information.

Upon leaving the cafeteria, defendant went through the standing metal detector and entered a courtroom in which Family Court Justice Michael DeCiantis was presiding. Approximately thirty or forty minutes later Montanari approached Dodd and told him that defendant wanted to see him. Dodd entered the courtroom and sat in the spectator section. When defendant noticed that Dodd had entered the room, he interrupted the examination of a witness, turned to Justice DeCiantis, and said, "Your Honor, one moment. I have something I want to give Captain Dodd." The defendant approached Dodd and removed from his clothing a metal object that appeared to be a hand grenade. As he did so, defendant said: "Be careful with it. Don't pull the

---

1. In his brief to this court, defendant characterizes the statements contained in the letter to Mr. Carter as "shenanigans." During cross-examination, however, defendant admitted twice that "[he meant] what [he said]" when he announced, in the letter, his intention to smuggle a hand grenade into the Kent County Courthouse.

pin. It might explode." Justice DeCiantis, who testified at the trial, said that he did not hear Mr. Berberian say, "It might explode." Dodd then approached the bench, and informed Justice DeCiantis of what had occurred, and the justice repeated the statement for the record. Shortly thereafter defendant was arrested and transported to State Police headquarters where the purported grenade was tested. The testing was actually carried out by Deputy Moy (Moy) of the office of the State Fire Marshal. Moy placed the object in a bunker and attempted to fire it by pulling the pin from a remote location. He had been unable by mere visual examination to determine whether or not it was capable of exploding. When the object did not explode, Moy used an explosive to penetrate the body of the object. An examination of the opened "grenade" revealed that it was filled with an inert metallic substance incapable of exploding.

Although defendant admitted most of the facts set forth by the state's witnesses, he characterized the entire incident as a "tongue in cheek" prank that was designed solely to illustrate the inadequacy of the weapon-detection facilities at the Kent County Courthouse. In support of his appeal Mr. Berberian raises five issues. These issues will be considered in the order in which they are raised in defendant's brief.

The defendant first argues that the trial justice misconceived the test for determining if a threat had been made under state law and that his construction of the statute was in violation of defendant's rights as guaranteed by the First Amendment to the Constitution of the United States. He argues in his second contention that the trial justice erred in failing to consider the subjective reactions of the recipients. Both arguments will be considered together, since they are related.

The statute pursuant to which defendant was charged, G.L. 1956 (1981 Reenactment) § 11–13–9, reads:

"Every person who places or threatens to place a bomb or other explosive in any public or private building, or area where persons may lawfully assemble as in § 11–11–1 provided, or falsely reports the placing of such bomb or other explosive in such a building or area shall upon conviction be imprisoned not exceeding ten (10) years and fined not exceeding five thousand dollars ($5,000)."

The defendant suggests that his lack of intention to carry out his threat negates the substance of the charge. He cites *State v. Mancini,* 108 R.I. 261, 274 A.2d 742 (1971), in support of this argument. In *State v. Mancini,* an extortion case, this court held that threatening words had to be considered in the context in which they were uttered. In that case the words uttered were, "Well, for $100 a week you can stop all these fights." *Id.* at 265, 274 A.2d at 744. The words taken by themselves could only be given meaning by evidence that showed a series of disturbances which had been instigated by Mancini. In the case at bar the words uttered were unequivocal and unambiguous in the assertion that Berberian would bring a hand grenade into the Kent County Courthouse. Cases that are more in point on the subject of defendant's contention that his action was in jest are those federal cases involving reports of the presence of bombs or explosives in airports or on planes in violation of 18 U.S.C.A. § 35 (West 1969) which makes it a criminal offense falsely to report the presence of a bomb or destructive substance on an aircraft.

In *United States v. Rutherford,* 332 F.2d 444, 445 (2d Cir.), *cert. denied,* 377 U.S. 994, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964), the defendant was convicted of violating this statute by stating to an airline stewardess while walking near the rear of an airplane, "I have to sit near the back because I have a bomb." At trial the defendant stated that he had merely used the word "bomb" as a colloquial expression for a marine sextant that he was carrying in a wooden case. The court rejected this contention and held that the defendant's actual intent to damage or endanger the safety of persons on board the aircraft was of no significance.

The gravamen of the charge was the imparting of the false information, without more. In response to the argument that the federal statute was in violation of the First Amendment, the court observed:

"If the statute so far as it applied to aircraft were limited to making criminal the imparting of false information with respect to the existence of a bomb on a loaded aircraft, there could be little doubt that the giving of the false information would be beyond the protection of the First Amendment. It would fall within the principle of the false cry of fire in a crowded theater, the classic illustration of unprotected speech given by Mr. Justice Holmes in *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470. Such speech is characterized as a 'verbal act' by Mr. Justice Lamar in *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 439, 31 S.Ct. 492, 55 L.Ed. 797, cited in the Schenck opinion." *United States v. Rutherford,* 332 F.2d at 446.

In *United States v. Sullivan,* 329 F.2d 755 (2d Cir.), *cert. denied,* 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964), the defendant, who was on a Mohawk Airlines flight, stated falsely to a stewardess that his luggage, which had been placed aboard, contained a TNT bomb. In his defense Sullivan claimed that he had had no malice or malicious or evil purpose. The court responded by citing *United States v. Allen,* 317 F.2d 777 (2d Cir.1963), which held that the conveying of false information about a bomb or a bomb hoax fulfills the requirement of the criminal statute whether done with malice or not.

In *United States v. Nusz,* 462 F.2d 617 (9th Cir.1972), the defendant telephoned a threat to dynamite a building occupied by the National Forest Service. He argued in defense that a threat could form the basis for a conviction only if made with a present intention to damage or destroy property by means of an explosive. The court rejected

this argument and stated that no such intention to carry out the threat was necessary.

▮ The intention of the Legislature of Rhode Island in enacting § 11–13–9, like the intention of Congress in enacting the statute referred to in the cases cited, was to prohibit, and deter and to impose sanctions for, the making of false reports of the placing of a bomb or other explosive in any public or private building. It is clearly the intention of the Legislature to protect persons in this state not only from the placing of bombs but from the undesirable effects of the exercise of a macabre sense of humor by those who would make such false reports. The defendant in the case at bar may well have intended no physical harm when he made the threat.[2] However, in order to violate this statute, it is sufficient that the threat be made, regardless of the subjective intention of defendant. The statute is not aimed at pure speech, it is designed to prevent harmful and frightening verbal acts. It is not necessary, therefore, to examine the subjective intention of the author of the false report or the subjective reaction of the recipients.

We recognize the unique vulnerability of aircraft, airports and public buildings to this kind of threat. The fears that may be engendered, the necessity to clear buildings, alter schedules, and disrupt orderly proceedings amply support the Legislature in curbing such a substantive evil. The practical joker can create as much havoc as the sociopathic malefactor. Consequently, defendant's first and second contentions are unavailing.

▮ The defendant's next contention is that the Kent County Courthouse is not a building within the protection of the statute. He argues that only a building in which persons may lawfully assemble, as in

---

2. The lack of intention to cause actual physical harm may be considered in mitigation of pun-

ishment. The trial justice obviously took this

§ 11–11–1, is protected.[3] The short answer to this argument is that the statute protects *any public or private building* without limitation. The statute then proceeds to protect an *area* in which persons may lawfully assemble, as in § 11–11–1. The statute does not purport to protect all *areas* outside buildings save those in which certain activities are likely to take place. For example, a false report of the placing of a bomb in the middle of a deserted and dense forest would probably not come within the prohibitions of this particular statute since that area would not be one in which persons may lawfully assemble for the purposes set forth in § 11–11–1.

■ The defendant argues that the words of the statute are ambiguous. This argument is wholly without merit since the words of the statute, if viewed in their plain and ordinary meaning, convey a clear and unmistakable message. Therefore, there can be no attack based upon vagueness or overbreadth.

■ Next, the defendant argues that the statute prohibits the report or threat to "place" a bomb as opposed to a report or threat to bring or deliver a bomb to someone. We believe that defendant seeks to carve out a distinction without a difference. Whether a bomb or a grenade is placed in a building in a spot where no person is present or placed in the hands or possession of a person who is on the premises does not control the application of the statute. No statute should be construed to reach an absurd or unreasonable result. *Algiere v. Fox,* R.I., 404 A.2d 72, 74 (1979); *Coletta v. State,* 106 R.I. 764, 769, 263 A.2d 681, 684 (1970); *Wilkinson v. Harrington,* 104 R.I. 224, 239, 243 A.2d 745, 753 (1968); *Town of Scituate v. O'Rourke,* 103 R.I. 499, 513, 239 A.2d 176, 184 (1968). This court should also not construe a statute in such fashion as to

make it devoid of purpose, inefficacious or nugatory. *Kingsley v. Miller,* 120 R.I. 372, 376, 388 A.2d 357, 360 (1978). This argument is unavailing. Therefore, the rulings of the trial justice denying defendant's motions to dismiss the information, denying defendant's motion for judgment of acquittal, and determining the admissibility of evidence were correct. The trial justice's instructions to the jury were proper and appropriate statements of the law applicable to the case.

Finally, defendant argues that the conduct of the trial justice during defendant's closing argument denied defendant a fair trial and deprived him of the effective assistance of counsel. We have examined defendant's contention in support of this argument and conclude that the trial justice's demeanor was not such as to deprive defendant of a fair trial or the effective assistance of counsel.

The admonitions given by the trial justice to counsel arose out of disagreements concerning the propriety of defense counsel's argument. In a number of instances defense counsel, in the course of argument, purported to instruct the jurors in respect to legal concepts in a manner that was different from the trial justice's determinations of law in accordance with which he planned to charge the jury. The trial justice insisted that questions of law be left to his instructions rather than be included in the arguments of counsel. Since the jurors are confined to determinations of fact and the trial justice is the sole judge of the law, the requirement that counsel confine his argument to the facts was one that was well within the authority and, indeed, the duty of the trial justice to impose.

■ At one point the trial justice admonished defense counsel for leaning on the

element into account in suspending defendant's sentence.

**3.** General Laws 1956 (1981 Reenactment) § 11–11–1 prohibits the disruption of "any town or ward meeting, any assembly of people met for religious worship, any public or private school, any meeting lawfully and peaceably held for purposes of moral, literary or scientific improvement, or any other lawful meeting, exhibition or entertainment, either within or without the place where such meeting or school is held * * *."

judge's bench and again suggested that it was improper for counsel to tell the jurors that they should not take into account Mr. Berberian's conduct on the witness stand. Both of these admonitions were well within the discretion of the trial justice in the performance of his duty to maintain order at the trial and to be certain that the argument of counsel did not contain erroneous propositions of law. The conduct of the trial justice was not improper and certainly did not constitute an abuse of his discretion. Therefore, the effect upon counsel of these justifiable admonitions cannot be held as violative of the defendant's right to a fair trial or to the effective assistance of counsel.

For the reasons stated, the appeal of the defendant is denied and dismissed, the judgment of conviction is affirmed, and the papers in the case may be remanded to the Superior Court.