DECISION
James Casale ("Casale") and Charles Benson ("Benson") (collectively "Employees") filed separate complaints for declaratory judgment against the City of Cranston ("City") pursuant to G.L. 1956 § 9-30-1 et seq., requesting that this Court declare that under the provisions of G.L. 1956 § 19-45-1.1, the City has no right of reimbursement for injured on duty ("IOD") benefits paid by the City from any money that the Employees may receive from their uninsured motorist carriers. The City has filed separate counterclaims for declaratory judgment against the Employees, pursuant to § 9-30-1 et seq., seeking this Court to declare that pursuant to G. L. 1956 § 45-19-1.1, the City has a right to reimbursement from the Employees' uninsured motorist carriers. These matters were consolidated by order. *Page 2 
 Facts and Travel
On August 9, 2004, [1] the Employees, firefighters for the City, were responding to a "fire call" when their fire/rescue vehicle was struck by a vehicle operated by Kristin Rosa.[2] As a result of Ms. Rosa's negligence in operating her vehicle, the Employees sustained severe and permanent mental and physical injuries and continue to require medical care.
As a result of their injuries and disabilities, the Employees received IOD benefits pursuant to § 45-19-1 et seq.[3]
Benson received $50,538.49 in IOD benefits.[4] Casale received $58,768.06 in IOD benefits for a first period of disability from August 10, 2004 to April 2, 2006. On April 3, 2006, Casale returned to modified duties with the City. Casale currently receives IOD benefits for a second period of disability.
The Employees have not recovered monetarily from Kristin Rosa, as she failed to maintain general liability insurance coverage. Thus, the Employees submitted claims to their *Page 3 
respective motor vehicle insurance carriers seeking uninsured motorist ("UM") benefits. On the date of the accident, Benson was insured for UM benefits through his motor vehicle insurance carrier, Allstate Insurance Company, ("Allstate") for $100,000. Allstate tendered the full $100,000, but in accordance with its contract with Benson, Allstate proffered that tender with a $50,583.49 reduction based on the IOD payments he had received. Similarly, Casale was insured for UM benefits through his motor vehicle insurance carrier, Amica Insurance Company, ("Amica") for up to $500,000. Amica initially tendered $100,000 to Casale, but, in accordance with its contract with Casale, has reduced the tender by $58,768.06 based on the IOD payments made to Casale.[5] Though the Employees paid for these UM benefits personally, the City asserts that it is entitled to reimbursement from these UM benefits for the IOD benefits previously paid to the Employees and for payments presently being made to Casale.
On October 23, 2007, Benson filed a complaint in the Superior Court, seeking that this Court declare, pursuant to § 9-30-1 et seq., that the City has no right of reimbursement from any money that Benson may receive from Allstate pursuant to the UM provisions of his personal motor vehicle insurance policy. Similarly, on October 26, 2007, Casale filed a complaint in the Superior Court, requesting that this Court declare the City has no right of reimbursement from any payments that Casale may receive from Amica pursuant to the UM provisions of his personal motor vehicle insurance policy. The City answered the complaints of Benson and Casale on November 6, 2007 and December 3, 2007, respectively. The City requests that the Employees' complaint be denied and dismissed and it be awarded the cost of defense. The City requested, in counterclaims against the Employees pursuant to § 9-30-1 et seq., that this Court declare that the City has the right of reimbursement from Benson's insurer, Allstate, for *Page 4 
$50,583.49 and Casale's insurer, Amica, for $58,768.06. On March 24, 2008, pursuant to the City's motion to consolidate,Benson v. City of Cranston, C.A. No. 07-5640 was consolidated with Casale v. City of Cranston, C.A. No. 07-5714.
 Standard of Review
The Uniform Declaratory Judgments Act, § 9-30-1 et seq., grants this Court the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. Further, § 9-30-2 provides in pertinent part:
 Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
This Court's power under the Uniform Declaratory Judgments Act is "broadly construed, to allow the trial justice to `facilitate the termination of controversies.'" Bradford Assocs. v. Rhode IslandDiv. of Purchases, 772 A.2d 485, 489 (R.I. 2001) (quotingCapital Properties, Inc. v. State,749 A.2d 1069, 1080 (R.I. 1999) (further citation omitted)). Furthermore, it is "well settled that the Superior Court has broad discretion to grant or deny declaratory relief under the [Uniform Declaratory Judgments Act]." Tucker Estates Charlestown, LLC v.Town of Charlestown,964 A.2d 1138, 1140 (R.I. 2009) (citation omitted).
 Law and Analysis
Our Supreme Court has explained that the "intent behind § 45-19-1 was to `provide greater work-related-injury benefits to certain public employees whose jobs require them to serve the state or its municipalities, often in dangerous situations.'" Hargreaves v. Jack,750 A.2d 430, 433 (R.I. 2000) (citing Labbadia v. State,513 A.2d 18, 21 (R.I. 1986)). Section 45-19-1 "automatically triggers IOD benefits upon the occurrence of a line-of-duty illness or injury *Page 5 
without requiring the police officer [or fire fighter] to show fault on the part of the respective city, town, fire district, or state.Kaya v. Partington, 681 A.2d 256, 258 (R.I. 1996) (citingLabbadia, 513 A.2d at 21)). However, "the IOD statute does not preclude an officer from seeking recovery of damages, including compensation for pain and suffering, from a third party."Id. at 259. Section 45-19-1.1 provides a means for reimbursement, under certain circumstances, for the city or town that has made IOD payments. Sections 45-19-1.1 provides:
 Where the injury or sickness for which compensation is payable under § 45-19-1, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury or sickness, the employee may take proceedings, against that person to recover damages, and the employee is be [sic] entitled to receive both damages and compensation; provided, that the employee, in recovering damages either by judgment or settlement from the person liable to pay damages, shall reimburse the city, town, or the state of Rhode Island by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement, and the receipt of those damages by the employee does not bar future compensation. If [sic] the employee has been paid compensation under that chapter, the city, town, or state of Rhode Island, by whom the compensation was paid, is entitled to indemnity from the person liable to pay damages as previously stated, and to the extent of the indemnity, is subrogated to the rights of the employee to recover damages; provided, that when money has been recovered, either by judgment or by settlement, by the employee from the person liable to pay damages as previously stated, by suit or settlement, and the employee is required to reimburse the city, town, or state of Rhode Island by whom the compensation was paid, the employee or the employee's attorney is entitled to withhold, from the amount to be reimbursed, that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees, which is the amount which the employee is required to reimburse the city, town, or state of Rhode Island by whom compensation was paid, bears to the amount recovered from the third party.
The Employees contend that § 45-19-1.1 clearly and unambiguously requires an employee who recovers damages from a third party tortfeasor, not UM benefits, to reimburse his or her employer for IOD payments. The City argues that the UM benefits are available to the *Page 6 
Employees as a result of a negligent third party's, Kristin Rosa's, legal liability, and thus the City must be reimbursed from the UM payments.
When this Court "is confronted with a statute that contains clear and unambiguous language, [it] construe[s] the statute literally and accord[s] the terms their plain and ordinary meaning." Lynch v.Spirit Rent-a-Car, Inc., 965 A.2d 417, 425 (R.I. 2009) (citingLiberty Mut. Ins. Co. v. Kaya, 947 A.2d 869, 872 (R.I. 2008)). However, when statutory provisions are ambiguous, this Court will "examine the statute in its entirety in order to discern the legislative intent and purpose behind it." Planned EnvironmentsMgmt. Corp. v. Robert, 966 A.2d 117, 122 n. 8 (R.I. 2009) (citingState v. LaRoche, 925 A.2d 885, 888 (R.I. 2007)) (further citations omitted). Also, given § 45-19-1 et seq.'s "remedial nature, any ambiguities in the statute generally `must be construed liberally in favor of the employee.'" Rison v. AirFilter Systems, Inc., 707 A.2d 675, 681 (R.I. 1998) (quotingColetta v. State,106 R.I. 764, 772, 263 A.2d 681, 685 (1970)).
This Court's interpretation of § 45-19-1.1 is guided by our Supreme Court's interpretation, in Rison, [6]
of G.L. 1956 § 28-35-58, providing for the reimbursement of workers' compensation carriers. The pertinent portion of § 28-35-58 interpreted in Rison is inescapably similar to § 45-19-1.1. Section 28-35-58 provides in part:
 (a) Where the injury for which compensation is payable under chapters 29 — 38 of this title was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under those chapters for that compensation, and the employee shall be entitled to receive both damages and compensation. The employee, in recovering damages either by judgment or *Page 7 
settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of those damages by the employee shall not bar future compensation.
In determining that a specific compensation award, from a workers' compensation carrier, should be credited against settlement damages, our Supreme Court provided its interpretation of § 28-35-58 and similar statutes in other jurisdictions, explaining that they mandate reimbursement from funds acquired from culpable tortfeasors:
 These statutes share a common policy: to permit injured workers to recover tort damages
from third parties while preserving their employers' potential workers' compensation liability as security against a deficient tort recovery and, at the same time, guarding against any double recovery or windfall to the injured employees. . . . However, to avoid an excessive or a double recovery by the employee, the employer is allowed to obtain reimbursement of its compensation payments from damages recovered by the employee from responsible third parties. The employer's workers' compensation obligations are typically set off against the proceeds of any tort settlement or judgment so that the employer is reimbursed for any compensation previously paid or payable in the future to the employee. Once this is done, the injured employee is allowed to retain any excess tort damages (net of reimbursed or credited workers' compensation benefits) recovered from the settling third-party tortfeasor. `The central objective is to provide the mechanics that will achieve the result described . . . the third party paying what he would normally pay if no compensation question were involved; the employer and carrier [insurer] "coming out even" by being reimbursed for their compensation expenditure; and the employee getting any excess of the damage recovery over compensation.' Rison, 707 A.2d at 683 (quoting Arthur Larson, 6 Workers' Compensation Law § 74.16(a) (1997)) (emphasis added).
Further, our Supreme Court reiterated that reimbursement is necessitated by recovery from tortfeasors, not the employees' UM coverage providers:
 [A]lthough the [Workers' Compensation Act ("WCA"] creates no-fault liability on the employer's part to benefit and protect the employee, it also reflects a policy judgment that, whenever possible, any culpable tortfeasor(s) should bear the ultimate *Page 8 
financial burden for the employee's injuries. Thus, when a recovery can be obtained against a responsible third party (who usually cannot be held liable or amenable to a substantial settlement without some degree of culpability), the third party is made to bear the cost of those injuries while the employer whose liability arises solely through the WCA's no-fault liability provisions is reimbursed or credited pro tanto for its past and continuing WCA obligations. It is critical to recognize that under the WCA the employer serves as a vanguard for the employee's welfare, standing ready to advance benefits to the employee without delay and without determination of fault until the employee obtains a recovery from any settling third-party tortfeasor or tort-judgment debtor. Id. at 683-684 (citations omitted) (emphasis added).
Noting that "`the well-known canon of statutory constructionin pari materia dictates that similar statutes should be interpreted similarly[,]'" State v. DiStefano,764 A.2d 1156, 1160 (R.I. 2000) (quoting State v. DiCicco,707 A.2d 251, 253-54 (R.I. 1998)), this Court finds, in light of our Supreme Court's interpretation of § 28-35-58, that our Supreme Court would interpret § 45-19-1.1 to require reimbursement from funds acquired from culpable, third-party tortfeasors, not employees' UM coverage providers.[7] In the case at bar, the Employees are pursuing insurance claims against their UM carriers, not the negligent third-party. Accordingly, this Court finds that § 45-19-1.1 provides no right to reimbursement from any proceeds the Employees have received or may receive from their respective UM coverages.[8] *Page 9 
The City argues that Manzotti v. Amica Mut. Ins. Co.,656 A.2d 625 (R.I. 1995) ("Manzotti I") and Manzotti v.Amica Mut. Ins. Co., 695 A.2d 1001 (R.I. 1997) ("ManzottiII") recognize its right to reimbursement from the payments made by the Employees' insurers pursuant to their UM coverage. In these cases, a police officer struck by a motor vehicle obtained $50,000 from the tortfeasor's insurer. Manzotti I,656 A.2d at 626. He also received $22,400 in IOD payments from the City of Providence. Id. In an arbitration proceeding between the police officer and his insurer, Amica, regarding his claim for underinsured motorist coverage, the arbitrator determined that the police officer suffered total damages of $80,000. Id. In the police officer's suit to confirm the award, filed against his insurer, the trial justice ordered his insurer to pay the officer $30,000 pursuant to his underinsured motorist coverage, after reducing the $80,000 arbitration award by the $50,000 received from the tortfeasor's insurer, and ordered the police officer to reimburse to Providence the $22,400 in IOD benefits that he had been paid. Id. Our Supreme Court explained that this distribution was an "equitable remedy." Id. Further, "The Superior Court reasoned that this would assure [the police officer] full compensation for his injuries and would avoid a double recovery."Id. (citing Poulos v. Aetna Ca. Sur. Co.,119 R.I. 409, 379 A.2d 362 (1977)). The Manzotti I Court remanded the case to the Superior Court to allow Providence to become a party to the dispute to effectuate the trial justice's distribution of damages. Id. After Providence intervened, Manzotti and his insurer argued in a later appeal that Providence was not entitled to reimbursement from Manzotti because the city failed to perfect its lien pursuant to § 45-19-1.3.[9] *Page 10 
Our Supreme Court held:
 Manzotti . . . is required by the statute to reimburse the city regardless of whether the city has complied with the statutory lien provisions in order to enforce its lien against a third party. The city's right to reimbursement from Manzotti is not dependent upon the existence of a written notice of statutory lien against him but is instead clearly provided to the city by § 45-19-1.1. Accordingly, any failure on the part of the city to perfect its lien against Manzotti is not fatal to the city's claim for reimbursement from the funds he receives from his insurer. Manzotti II, 695 A.2d at 1003-04.
Though our Supreme Court seemed to indicate that the police officer's reimbursement payment would come from underinsured motorist benefits, this Court finds significant that the trial justice ordered reimbursement only after the police officer had recovered $50,000 from the tortfeasor's insurer, making it possible for the police officer to reimburse the city from those funds.Manzotti II, 695 A.2d at 1002. Such an "equitable remedy" would be consistent with this Court's interpretation of § 45-19-1.1. This Court further notes that while double recovery was a concern in Manzotti, see Manzotti I,656 A.2d at 626, it is not a concern here because Allstate has reduced its tender by $50,583.49 and Amica has reduced its tender by $58,768.06 based on the IOD payments made to Benson and Casale, respectively. Cf. Poulos v. Aetna Cas. Sur. *Page 11 Co., 119 R.I. 409, 379 A.2d 362 (1977) (interpreting insurance contract to permit deduction of workers' compensation benefits from UM payments to the extent the workers' compensation benefits represented a double recovery). Thus, Manzotti I andManzotti II are distinguishable from the case at bar, in which the Employees have been unable to obtain any recovery from the tortfeasor, meaning reimbursement would therefore have to come from their UM benefits. This Court finds as a fact and as a conclusion of Law that reimbursement in this case can be obtained from the Employees who received IOD benefits, only if they recovered damages from a responsible third party pursuant to § 45-19-1.1.
Receipts from the respective Employees, U.M. carriers, which did, in fact, set off IOD payments made to the Employees from their UM proceeds are not subject to be reimbursed to the City of the Employees.
 Conclusion
For the reasons stated herein, this Court finds for the Plaintiffs in this matter. Counsel shall prepare an Order consistent with this Opinion.
[1] The parties have stipulated to sixteen facts.
[2] Kristin Rosa is not a party to this litigation.
[3] Section 45-19-1 provides in pertinent part:
 (a) Whenever any police officer of the Rhode Island Airport Corporation or whenever any police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties or due to their rendering of emergency assistance within the physical boundaries of the state of Rhode Island at any occurrence involving the protection or rescue of human life which necessitates that they respond in a professional capacity when they would normally be considered by their employer to be officially off-duty, the respective city, town, fire district, state of Rhode Island or Rhode Island Airport Corporation by which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, is employed, shall, during the period of the incapacity, pay the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, the salary or wage and benefits to which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period. . . .
[4] Benson has retired from the Cranston Fire Department.
[5] Although, the amounts tendered to Benson and Casale based on their respective insurance contracts were not among the stipulated facts, the City admitted to these facts in its answer. (See Answer of Defendant, City of Cranston to Plaintiff, Charles Benson ¶ 11; Answer of Defendant, City of Cranston to Plaintiff, James Casale ¶ 11).
[6] The portion of § 28-35-58 interpreted by our Supreme Court inRison v. Air Filter Systems, Inc., 707 A.2d 675 (R.I. 1998) was not altered by subsequent amendments to § 28-35-58 through P.L. 2002 ch. 199
§ 4 and P.L. 2002 ch. 280 § 4.
[7] The Court of Appeals of Maryland, Maryland's highest court, has noted that "[t]he jurisdictions that have addressed the question of whether a workers' compensation carrier that has paid compensation benefits should have a lien upon the proceeds of the claimant's recovery under an uninsured motorist policy have almost unanimously held that the carrier is not entitled to such a lien."Erie Ins. Co. v. Curtis,330 Md. 160, 170, 623 A.2d 184, 189 (1993) (citing 2A Arthur Larson,The Law of Workmen's Compensation § 71.23(a)(1993));see also Modern WorkersCompensation, § 206:16 (1993) (stating that "most states have held that the workers' compensation lien does not apply to a recovery from the UM carrier[]") (footnotes omitted).
[8] The City correctly points out that but for a third party's negligence and accompanying legal liability, the Employees would be unable to collect funds from their insurers. Thus, the City contends that it should be reimbursed from the UM benefits. This Court finds, however, that § 45-19-1.1 plainly requires that the funds used to reimburse a city derive from the legally liable tortfeasor, not UM payments made by insurers in lieu of the responsible party's damages. See Lynch,965 A.2d at 425; § 45-19-1.1 (providing, in part, that "the employee, in recovering damages either by judgment or settlement from the person liable to pay damages, shall reimburse the city").
[9] Section 45-19-1.2 provides for a lien for a municipality:
 Any employer paying compensation under the provisions of § 45-19-1 shall, if the employee recovers damages from a third person on account of the injuries or sickness for which compensation is payable, have a lien upon that part going to the employee, of any recovery or sum had or collected or to be collected by the employee, or by the employee's heirs or personal representatives in the case of the employee's death, whether by judgment or by settlement or compromise, up to the amount of compensation paid. . . .
Section 45-19-1.3 provides the means of perfecting such a lien:
 No lien is effective, unless a written notice containing the name and address of the employee, the date that the employee became wholly or partially incapacitated, the name and location of the employer, and the name of the person or persons, firm or firms, corporation or corporations, alleged to be liable to the employee for the injuries received or sickness contracted, is filed in the office of the city or town clerk, if the employer is a municipality, or the office of the department of administration, if the employer is the state of Rhode Island prior to the payment of any moneys to the employee, or the employee's attorneys or legal representatives as compensation for the injuries or sickness. The employer shall mail a copy of the notice to any insurance carrier which has insured the person, firm, or corporation against the liability.