James **RISON III**

v.

**AIR FILTER SYSTEMS, INC.**

**No. 95–510–M.P.**

Supreme Court of Rhode Island.

Feb. 2, 1998.

Bernard Patrick Healy, Brian T. Burns, Providence, for Plaintiff.

Tedford Radway, Cranston, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is a worker's compensation case in which we confront the following issue: How does an employee's settlement of a third-party tort claim arising out of his work-related injuries affect the employee's ability to obtain a workers' compensation award for his disfigurement and bodily loss of use?

This question comes before us on a petition for certiorari seeking review of a decision by a panel of the Workers' Compensation Court's (WCC) Appellate Division (the panel) construing G.L.1956 § 28–35–58 of the Rhode Island Workers' Compensation Act (WCA).[1] To conduct this review, we must consider the workers' compensation ramifications of an injured employee's recovery of a settlement from an alleged third-party tortfeasor that is putatively responsible for causing the employee's work-related injuries. The panel's decision holds that the employer need not pay any specific-compensation award to the employee if the amount of the settlement (after reimbursing the employer for any worker's compensation benefits already paid to the employee) exceeds the amount of any specific-compensation award that would otherwise be payable. However, under the panel's view, the employee is entitled to a credit in the amount of such award that reduces the § 28–35–58 suspension period during which the employer's insurer is relieved from paying any compensation benefits to the employee.

1. General Laws 1956 § 28–35–58, entitled "Liability of third person for damages" provides as follows:

"Where the injury for which compensation is payable under chapters 29—38 of this title was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under those chapters for that compensation, and the employee shall be entitled to receive both damages and compensation. The employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of those damages by the employee shall not bar future compensation. An insurer shall be entitled to suspend the payment of compensation benefits payable to the employee when the damages recovered by judgment or settlement from the person so liable to pay damages exceeds the compensation paid as of the date of the judgment or settlement; the suspension paid [sic] shall be that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate; however, during the period of suspension the employee shall be entitled to receive the benefit of all medical and hospital payments on his or her behalf; and if the employee has been paid compensation under those chapters, the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages, and to the extent of that indemnity shall be subrogated to the rights of the employee to recover damages therefor. When money has been recovered either by judgment or by settlement by an employee from the person so liable to pay damages, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his or her attorney shall be entitled to withhold from the amount to be reimbursed that portion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party."

Because we conclude that this result comports with the applicable statutory provisions and with the underlying policies of workers' compensation, we affirm.

## Facts and Travel

The material facts of this case are not in dispute. On March 3, 1987 the employee, James Rison III (Rison), sustained employment-related injuries while laboring for his employer, Air Filter Systems, Inc. (Air Filter), as a sheet-metal worker. Rison suffered devastating third-degree burns over half his body when a cataclysmic flash fire of glue scorched him severely. The burns, combined with necessary surgical skin grafts, left Rison with permanent scarring and disfiguration over 78 percent of his body. As a result, patches of shriveled, discolored skin blanket Rison's elbows, back, and legs and severe scars mar his right jaw, ears, nose, and fingers. Largely because of his reduced manual dexterity, Rison also suffers from a permanent loss of use in his upper extremities of between 11 and 16 percent.

Beginning on March 24, 1987, and pursuant to a memorandum of agreement with Air Filter, Rison began to receive workers' compensation benefits in the form of weekly indemnity payments at a "weekly comp rate" of $244 per week. Pursuant to G.L.1956 § 28-33-17 of the WCA, these weekly benefits compensated Rison for lost wages due to his incapacity. Thereafter, on November 7, 1991, approximately four-and-a-half years after he began to receive weekly benefits, Rison filed an original WCC petition to obtain an additional specific-compensation award under § 28-33-19 of the WCA for his disfigurement and the loss of the use of his hands.

However, before that petition could be heard, Rison entered into a settlement on December 1, 1991, with Stanley Bostitch Company, an alleged third-party tortfeasor, in satisfaction of Rison's tort claims against Stanley Bostitch for the personal injuries he had sustained in the accident. Although the record does not reveal the precise amount of the settlement, it was apparently in excess of $2.5 million. On December 11, 1991 Rison reimbursed Air Filter $225,312 for the weekly benefits it had paid out to Rison up to the date of Rison's settlement with Stanley Bostitch (less the pro rata attorneys' fees and expenses attributable to Rison's recovery of this sum from Stanley Bostitch). The parties stipulated that this reimbursement reflected Air Filter's presettlement workers' compensation weekly indemnity payments to Rison and liquidated Air Filter's WCA subrogation rights for having made such payments.

Thereafter, a WCC judge heard Rison's § 28-33-19 petition for specific compensation on stipulated facts and evidence. After considering medical reports and observing Rison's injuries, the judge determined that the evidence warranted the maximum statutory award. Consequently, she ordered Air Filter to pay $52,582 to Rison, compensating him for loss of use in his extremities and for his disfigurement.[2] At the parties' request, the court also ruled on whether this specific-compensation award should be offset against Rison's recently obtained settlement proceeds. Describing the issue as "apparently a case of first impression," the WCC trial judge ruled that a specific award under § 28-33-19 would not be subject to the payment-suspension mechanism detailed in § 28-35-58. However, the WCC judge also held that Air Filter properly had been reim-

---

**2.** General Laws 1956 § 28-33-19 provides that awards under that section are payable in a lump sum within fourteen days unless the parties agree otherwise. Partial loss of use of any portion of the body is calculated as a percentage of a loss or severance of the entire part. Permanent disfigurement is compensable at a maximum 500 weeks. Although a § 28-33-19 award is ultimately expressed as a total sum of money, the award initially is calculated (consistent with WCA conventions) as the product of the employee's "comp rate" multiplied by a number of weeks set out in the statutory schedule. Here, the total sum payable was apparently derived via the following computation in accordance with § 28-33-19(a):

| | | | |
|---|---|---|---|
| 16% loss of left extremity | = 49.92 weeks | × $90/week (max.rate) | = $ 4,493 |
| 11% loss of right extremity | = 34.32 weeks | × $90/week (max.rate) | = $ 3,089 |
| Disfigurement | = 500 weeks | × $90/week (max.rate) | = $45,000 |

$52,582

bursed for the weekly indemnity benefits it had paid to Rison before the Stanley Bostitch settlement and that Air Filter's duty to pay future weekly indemnity benefits to Rison would be suspended in accordance with § 28–35–58. As stated by the WCC judge, "Consequently, any award of specific compensation after a third-party settlement would be paid in full to the employee without any offset or consideration of the monies which have been paid to him by the third-party settlement."

Air Filter appealed to the WCC's Appellate Division, alleging that it should be entitled to set off the amount of the specific-compensation award against the settlement proceeds Rison had received from Stanley Bostitch without having to pay this sum to Rison. The panel agreed and reversed the trial judge, holding that any specific compensation awarded under § 28–33–19 would be subject to the suspension mechanism of § 28–35–58. The panel further determined that although Air Filter would not be required to pay any specific-compensation monies to Rison, the amount of the specific award would reduce "on a dollar for dollar basis" the period of time during which Air Filter's duty to pay future workers' compensation benefits to Rison would be suspended.

Rison petitioned this court for a writ of certiorari, which we granted, to resolve this important workers' compensation question.

# I

## Standard of Review

This petition presents questions of statutory construction. We review the Appellate Division's decision de novo, pursuant to § 28–35–30, for any error of law or equity. See also Pion v. Bess Eaton Donuts Flour Co., 637 A.2d 367, 370 (R.I.1994); Wright v. Superior Court, 535 A.2d 318, 320 (R.I.1988).

# II

## Discussion

Before we turn to the questions of statutory interpretation raised by this petition, it is helpful to consider what is not at issue here. No party disputes that in WCA parlance "weekly benefits" (also referred to as "regular compensation," "disability benefits," or "indemnity benefits") are awarded pursuant to § 28–33–17 as compensation for an employee's lost wages due to his or her work-related incapacity, whereas "special compensation" or "specific compensation" is awarded pursuant to § 28–33–19 for an employee's specific, scheduled bodily injuries, including disfigurement. The parties also appear to agree that the WCA, as a general proposition, does not bar an injured employee from recovering damages from a third-party tortfeasor and thereafter obtaining workers' compensation benefits from the date of settlement forward. Although the parties clash over how the statutorily prescribed suspension period affects their respective rights and obligations, they appear to agree that Rison sustained a work-related injury and that Air Filter remains potentially obligated to pay future weekly disability benefits to Rison despite Rison's settlement with Stanley Bostitch.[3] They also appear to agree that Air Filter's obligations, at least with respect to weekly indemnity benefits, are suspended for as long as the WCA benefits that would otherwise be due and payable to Rison can be set off or credited against any settlement proceeds remaining from the Rison–Stanley Bostitch settlement after Air Filter has been reimbursed for its presettlement compensation payments.[4] The essential controversy then is whether any specific benefits awarded to an employee under § 28–33–19 after the employee has received a third-party settle-

---

3. Air Filter stated before the WCC: "I'm not saying this employee can't receive future weekly checks. If he lived a long time, he could."

4. As evidenced by Rison's payment of $225,312 to Air Filter, Air Filter is entitled under the WCA to reimbursement for any presettlement compensation it has paid to Rison. Indeed, this point is well established in our law and was not affected by the 1985 amendment. See DiQuinzio v. Pan-

ciera Lease Co., 612 A.2d 40, 43 (R.I.1992) ("If an injured employee does in fact recover against a nonimmune entity, he or she is obligated to reimburse his or her employer (or the employer's insurance carrier) for any compensation paid as of the date of the judgment or settlement.").

ment of a tort claim are likewise subject to § 28–35–58's suspension mechanism.

## A. Background

Before 1985, the law in Rhode Island was that an injured employee who settled or recovered a money judgment in connection with a tort claim against a nonemployer third party could not thereafter obtain workers' compensation benefits for the same injury. *See Travis v. Rialto Furniture Co.,* 101 R.I. 45, 48, 220 A.2d 179, 181 (1966); *Colarusso v. Mills,* 99 R.I. 409, 416, 208 A.2d 381, 385 (1965); *see also Matteson v. Travelers Insurance Co.,* 738 F.2d 619, 621–22 (1st Cir.1984) (Breyer, J.). Rather, an injured employee who chose to pursue a third-party tort claim was compelled to sink or swim monetarily based upon the results of that lawsuit. Thus in *Travis* a truckdriver injured in an on-the-job traffic collision elected to pursue a tort claim against a third party and recovered $6,750. *Travis,* 101 R.I. at 46, 220 A.2d at 180. The *Travis* court held that the employee was thereafter barred from seeking weekly WCA indemnity benefits from his employer for his incapacity to work—regardless of whether the tort settlement proved to be sufficient to compensate him for all the lost earnings he might otherwise have been entitled to recover under the WCA during the period of his incapacity. *Id.* at 48–49, 220 A.2d at 181.

The *Travis* court based this holding on its construction of § 28–35–58 of the WCA, which at the time read in pertinent part:

> "[T]he employee may take proceedings, both against [the third party] to recover damages and against any person liable to pay compensation under said chapters for such compensation, *but shall not be entitled to receive both damages and compensation.*" (Emphasis added.) Section 28–35–58; *Travis,* 101 R.I. at 46, 220 A.2d at 180.

The court inferred from this statutory language an underlying legislative policy to preclude an employee's recovery of both damages and workers' compensation for the same injuries. *Travis,* 101 R.I. at 48, 220 A.2d at 181. The decision was grounded on the notion that an employee recovering tort damages has been "fully compensated for his injury and [has been] made whole by the recovery of such damages." *Id.* at 49, 220 A.2d at 181. Thus, after receiving a settlement award from an alleged third-party tortfeasor, the employee was deemed to have no remaining uncompensated injuries requiring redress under the workers' compensation system. *Id.* at 48–49, 220 A.2d at 181.

But in 1985 the General Assembly amended this provision of the WCA. It struck the above-noted language from § 28–35–58 and in its place provided:

> "[T]he employee shall be entitled to receive *both damages and compensation* provided that the employee, in recovering damages either by judgment or settlement * * * shall reimburse [the employer] to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of such damages by the employee *shall not bar future compensation.*" (Emphases added.) P.L.1985, ch. 186, § 1.

The amendment also introduced a suspension mechanism pursuant to which an employer's liability for future workers' compensation payments, that is, compensation accruing after the employee has obtained a third-party tort recovery via a settlement or a judgment, would be suspended for a length of time. The suspension period is calculated according to an arithmetic formula whose variables are the employee's weekly compensation rate as defined in the WCA (colloquially referred to as the "comp rate") and the excess of the settlement proceeds over the benefits already paid by the employer or its insurer as of the date of the third-party tort settlement or judgment. But the statute provides no express guidance for computing the suspension period when specific-compensation has been awarded. No explicit cues appear in the text and the explanation accompanying this WCA amendment states only that, "[T]his act would allow a person receiving compensation to sue a third party for damages and recover both the compensation and damages as long as the person paying the compensation is reimbursed for the compensation paid up to the date of judgment or settlement."

Rison posits that his entitlement to payment of specific compensation for his scheduled injuries under § 28–33–19 does not fall within the ambit of §. 28–35–58's suspension mechanism because he obtained such an award *after* he concluded his third-party tort-claim settlement with Stanley Bostitch. Rison argues that the WCA's language and purpose, and particularly the nature of the § 28–35–58 suspension mechanism, indicate that the suspension formula should be applied only to weekly indemnity benefits and not to specific-compensation awards under § 28–33–19, which, by the express terms of that section, are payable immediately to the employee in a lump sum. Therefore, Rison contends, he is entitled not only to recover a specific-compensation award from Air Filter in addition to keeping his tort settlement from Stanley Bostitch but also to receive a cash payment of that award from Air Filter in an immediate lump-sum recovery.

Air Filter counters that § 28–35–58's reference to "compensation" embraces both future specific-compensation awards and future weekly indemnity benefits and that the two types of compensation should be treated similarly. Air Filter points out that the Legislature knew how to exempt medical benefits from § 28–35–58's suspension provisions, but it took no similar action with regard to specific-compensation awards. It further argues that because Rison has presumptively been made whole by his large tort recovery from Stanley Bostitch, a lump-sum cash payment to Rison would allot him a double recovery and a windfall.

As previously noted, the panel held that the "benefits for loss of use otherwise payable to the employee * * * and benefits for disfigurement .* * * [are to be] credited against the excess proceeds of the employee's third party settlement to reduce the period of time in which the employee's entitlement to benefits are [*sic*] suspended." Our reading of the panel's decree is that Rison may obtain the benefit of a specific-compensation award—not by receiving any lump-sum payment from Air Filter—but by having the amount that Air Filter would otherwise have to pay as specific compensation credited against the excess settlement proceeds received by Rison from Stanley Bostitch. The result of this setoff or credit is to shorten Rison's suspension-of-compensation period by the number of weeks corresponding to the value of the § 28–33–19 specific-compensation award.

To convert the abstract into the concrete, under the approach adopted by the panel Rison's specific-compensation award of approximately $53,000 is to be set off or credited against the excess-settlement proceeds, thereby reducing the 179–year period during which Rison's benefits otherwise would be suspended by a little over four years.[5] In

5. Although the Appellate Division's decision does not provide any numerical calculations, we infer this result from the formula provided by § 28–35–58. The record does not indicate the precise amount of the settlement. Nor does it reveal whether any of the employee's attorneys' fees or litigation expenses were deducted from the gross settlement amount to calculate the amount of the third-party settlement proceeds for the purposes of computing the § 28–35–58 suspension period. Accordingly, for purposes of illustration only, we assume that the amount to be used in calculating the suspension period is exactly $2.5 million. However, because the parties have not raised this issue and because the record is silent on this point, we express no opinion on whether the figure representing "the excess damages paid" should reflect a deduction from the gross settlement amount for the employee's attorneys' fees and other litigation expenses incurred in obtaining the settlement.

The suspension period formula thus calculated yields the following results:

| | |
|---|---|
| $2,500,000 | (assumed amount of third-party settlement) |
| − 225,312 | (WCA compensation paid to Rison as of the date of the judgment or settlement) |
| $2,274,688 | (excess damages paid) |
| / 244 | (Rison's "weekly comp rate") |
| 9323 | (179–year suspension period in weeks before adjustment due to specific-compensation award) |
| − 216 | (week equivalent of specific award = $52,582/244) |
| 9107 | (weeks of suspension) |
| / 52 | (to convert weeks to years) |
| 175 | (years of suspension) |

the highly unlikely event that Rison is still alive and incapacitated at the end of that suspension period, Air Filter's obligation to make weekly indemnity payments would resume. However, although the panel's decision does not say so expressly, we interpret its decision to mean that Air Filter would have no obligation at that time to make an additional $53,000 specific-compensation payment because Rison has already been credited for his scheduled injuries via the four-year reduction in the suspension period. As explained below, we are of the opinion that this result comports with the salutary principles sought to be effectuated in the Legislature's 1985 amendment to the WCA and aligns Rhode Island with workers' compensation practices in other jurisdictions.

### B. *Are Specific Benefits a Type of Compensation?*

■ First, we are not persuaded by Rison's contention that § 28–35–58's reference to "compensation" applies only to weekly indemnity benefits. Rather we conclude that the unqualified term "compensation" as employed by the General Assembly in § 28–35–58 includes all types of compensation available under the WCA—except medical benefits, which are expressly exempted.

In making this determination, we are guided by the long-established tenet of statutory construction that "when the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning." *In re Sabetta,* 661 A.2d 80, 83 (R.I.1995) (quoting *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991)); *see also Thibault v. Berkshire Hathaway, Inc.,* 111 R.I. 381, 384, 302 A.2d 755, 757 (1973) (noting that clear and unambiguous language is dispositive of issues under the WCA). We must also bear in mind that given the WCA's remedial nature, any ambiguities in the statute generally "must be construed liberally in favor of the employee." *See Coletta v. State,* 106 R.I. 764, 772, 263 A.2d 681, 685 (1970).

Black's Law Dictionary broadly defines "compensation" as "remuneration or satisfaction for injury or damage of every description (including medical expenses)." Black's Law Dictionary 283 (6th ed.1990). Rison points to our decision in *Jones v. Grinnell Corp.,* 117 R.I. 44, 47, 362 A.2d 139, 141 (1976), in support of his argument that despite the usual broad scope of the term "compensation," this court has assigned it a narrower meaning within the context of the WCA. In *Jones,* the court noted that "the word 'compensation,' when employed in our Workmen's Compensation Act [as it was then known], encompasses a wide variety of benefits. It includes payments for the loss of earning capacity, a limb, hearing, or sight; support of dependents; disfigurement; and the payment of medical and funeral expenses." *Jones* also noted that specific compensation awarded under § 28–33–19, although a type of compensation, could also be conceived of as "damages" intended to repay an employee for a bodily loss. *Jones,* 117 R.I. at 47, 362 A.2d at 141. *Jones* thus distinguished specific compensation from weekly benefit payments that compensate for a lost opportunity to earn wages. *Id.; see also Moniz v. Providence Chain Co.,* 618 A.2d 1270, 1272 (R.I.1993) (noting that *Jones* sets out a clarification of the general conception that benefits under the WCA are compensation). Although *Jones* grappled with the question of when an injury had reached an end result for limitations purposes, and accordingly is of limited assistance here, *Jones*'s description of the nature of § 28–33–19 benefits is accurate as far as it goes. However, to say that specific-compensation benefits are more akin to tort damages than are weekly benefits is not to say that specific compensation is not "compensation" as that term is used in § 28–35–58.

Moreover, § 28–33–19 is entitled "Additional *compensation* for specific injuries" (emphasis added), a designation it has carried since the WCA's original formulation in 1912. Indeed, it has maintained this title through the 1956 codification of our General Laws and up to and including the present

version of the statute. *See* G.L.1956 § 28–33–19 (1956 enactment) (entitled "Additional compensation for specific injuries"); P.L. 1912, ch. 831, art. 2, § 12 (entitled "Additional compensation for certain injuries"). The first sentence of § 28–33–19 provides that benefits thereunder "shall be paid in addition to all *other* compensation" (emphasis added)—begging the inference that § 28–33–19 benefits are just another type of workers' compensation. Section 28–33–1, the first section of the relevant chapter, entitled "Workers' Compensation—Benefits," provides that employers subject to chapters 29 to 38 must pay "compensation" to employees covered by the WCA. Such an inclusive use of the term, which certainly embraces § 28–33–19 benefits, establishes the tenor of its usage for subsequent sections. The disputed section itself echoes this understanding, stating that the section applies when "compensation is payable under chapters 29—38 of this title." Section 28–35–58.

■ But perhaps the most convincing factor from an interpretive standpoint is that § 28–35–58 explicitly excludes medical expenses from the scope of its suspension-of-compensation mechanism. Following the maxim *inclusio unius est exclusio alterius,* we can infer that the Legislature, having specifically exempted the payment of medical expenses from the suspension applicable to other forms of WCA compensation, similarly would have mentioned § 28–33–19 benefits had it intended to exempt them from § 28–35–58 as well. Indeed, the Legislature did precisely that in § 28–33–17, in the context of cost-of-living adjustments, by explicitly providing, "This section shall apply only to payment of weekly indemnity benefits to employees * * * and shall not apply to specific compensation payments for loss of use or disfigurement or payment of dependency benefits or any other benefits payable under the Workers' Compensation Act." Section 28–33–17(f)(6). Thus the term "compensation" as it appears in § 28–35–58 must be taken to include specific compensation as well as weekly indemnity benefits.

Our conclusion in this regard is reinforced by an examination of the context and purpose of the pertinent statutory provisions. "This court has consistently held that '[w]hen charged with the duty of statutory construction, one must read the language so as to effectuate the legislative intent behind its enactment.'" *Sabetta,* 661 A.2d at 83 (quoting *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990)). Pursuant to the Legislature's 1985 amendment of § 28–35–58, an injured employee is "entitled to receive both damages and compensation" without having to give up one type of award entirely if he or she receives any monetary benefits from either potential source of recovery. The amendment obviously sought to provide employees with a statutory right to obtain both types of monetary relief—a right that had been denied to them under the prior version of the WCA as interpreted in *Travis.* On the other hand, there is no indication that the Legislature intended the amendment to confer a windfall on the employee. Were we to accept Rison's proposition that § 28–35–58 does not apply to specific-compensation awards, employees would be allowed to obtain not only both types of benefits (tort damages and workers' compensation) but also a double recovery for the same injuries. Because we conclude that this is not what the General Assembly intended when it amended § 28–35–58 in 1985, we reject this interpretation of the statute.

### C. *Is Specific Compensation Subject to the Suspension Mechanism?*

Having determined that § 28–35–58's reference to compensation includes any postsettlement specific compensation awarded to the employee, we next address whether a specific compensation award is subject to that section's suspension and reimbursement provisions. Here we are reminded that "no construction, particularly of a remedial statute, should be adopted which would defeat its evident purpose." *Coletta,* 106 R.I. at 770, 263 A.2d at 684. The duty of the Judiciary is to attribute to a statute the meaning most consistent with its evident purpose in order to effectuate the Legislature's intent. *See Gilbane Co.,* 576 A.2d at 1196; *see also McCarthy v. Environmental Transportation Services, Inc.,* WCC (Appellate Division) 91–11115 at 6 (citing *Gilbane Co.*).

Although the precise language employed by the Legislature is somewhat peculiar to our statute, the overall operation of § 28–35–58 is comparable to similar workers' compensation statutes in other jurisdictions. These statutes share a common policy: to permit injured workers to recover tort damages from third parties while preserving their employers' potential workers' compensation liability as security against a deficient tort recovery and, at the same time, guarding against any double recovery or windfall to the injured employees. Thus, under most state workers' compensation statutes, an employer's liability is not completely extinguished even after a third-party tortfeasor has paid a judgment or a settlement in connection with the employee's injuries. *See generally* Arthur Larson, 6 *Workers' Compensation Law* § 74.16(a)–(e) (1997) (and cases cited therein). However, to avoid an excessive or a double recovery by the employee, the employer is allowed to obtain reimbursement of its compensation payments from damages recovered by the employee from responsible third parties. The employer's workers' compensation obligations are typically set off against the proceeds of any tort settlement or judgment so that the employer is reimbursed for any compensation previously paid or payable in the future to the employee. Once this is done, the injured employee is allowed to retain any excess tort damages (net of reimbursed or credited workers' compensation benefits) recovered from the settling third-party tortfeasor. "The central objective is to provide the mechanics that will achieve the result described * * * the third party paying what he would normally pay if no compensation question were involved; the employer and carrier [insurer] 'coming out even' by being reimbursed for their compensation expenditure; and the employee getting any excess of the damage recovery over compensation." *Id.* at § 74.16(a).

Future workers' compensation liability, arising from an employer's continuing obligation to make weekly payments, is generally credited as it comes due against any remaining third-party settlement or judgment proceeds. The steps by which this intended result is to be achieved, however, are not always spelled out in the various workers' compensation statutes.

"A complication that, in the nature of things, cannot be avoided is the fact that at the time of distribution of the third party recovery the extent of the [employer's] liability for future compensation benefits often is unknown. Indeed, this would happen in almost every serious case in which the compensation payments are periodic and the third party recovery is reasonably prompt."

\* \* \* \* \* \*

"*If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the [employer] for compensation paid, or compensation for which the [employer] is liable, the correct holding is still that the excess of third party recovery over past compensation actually paid stands as a credit against future liability of the carrier.*" (Emphasis added.) 6 Larson, at § 74.31(e).

This future-benefits problem is especially apropos to our statute, which requires a work-related injury to have reached "maximum medical improvement" (also referred to as an "end result") before a claim for § 28–33–19 specific-compensation benefits may be presented. *See* § 28–33–19(c); *see also Jones*, 117 R.I. at 48, 362 A.2d at 141.

We are of the opinion that in amending § 28–35–58, the General Assembly intended to achieve the result described in Larson's above-quoted workers' compensation treatise. Two important and salutary policies are served thereby. First, although the WCA creates no-fault liability on the employer's part to benefit and protect the employee, it also reflects a policy judgment that, whenever possible, any culpable tortfeasor(s) should bear the ultimate financial burden for the employee's injuries. Thus, when a recovery can be obtained against a responsible third party (who usually cannot be held liable or amenable to a substantial settlement without some degree of culpability), the third party is made to bear the cost of those injuries while the employer whose liability arises solely through the WCA's no-fault liability provisions is reimbursed or credited pro tanto for

its past and continuing WCA obligations. It is critical to recognize that under the WCA the employer serves as a vanguard for the employee's welfare, standing ready to advance benefits to the employee without delay and without determination of fault until the employee obtains a recovery from any settling third-party tortfeasor or tort-judgment debtor. *See Wright,* 535 A.2d at 320; *Cacchillo v. H. Leach Machinery Co.,* 111 R.I. 593, 595–96, 305 A.2d 541, 542–43 (1973). If the employee does obtain a third-party recovery, the employer's WCA obligations are then credited or reimbursed only to the extent that any recovery from the third party equals or exceeds the employer's WCA obligations. But the employee is never required to reimburse the employer or its insurer out of his or her own pocket.

The second policy reflected in the statute is that the employee may pursue a recovery from alleged third-party tortfeasors either before or after collecting WCA benefits and may retain any excess proceeds recovered from such third parties. Thus the WCA implicitly recognizes that workers' compensation benefits are sometimes inadequate to compensate an employee for his or her injuries fully. *See Wright,* 535 A.2d at 320. Indeed, the very concept of workers' compensation embodies a compromise between the relative certainty of no-fault employer liability for an employee's work-related injuries and the fixed, but limited, schedule of benefits recoverable for such injuries. Thus under the WCA a lost eye or injured arm is worth only a scheduled maximum amount, an incapacitated employee recovers only a por-

tion of his or her reduced earning capacity, and no pain-and-suffering or punitive damages may be awarded to the injured employee. But on the other side of the equation, the employee is guaranteed these benefits without exposure to the vagaries of fault-based tort litigation. These dual policies undergird and percolate through the majority of our sister states' workers' compensation statutes.[6]

Section 28–35–58, as amended, promotes both policies by preserving an employer's potential liability for future weekly benefits as insurance against the possibility that the employee's tort recoveries will prove to be insufficient to indemnify him or her for the duration of his or her incapacity. In so providing, the 1985 amendment impliedly rejects the irrebuttable presumption expressed in *Travis* that a third-party tort recovery will always be deemed to compensate an employee fully for all his or her work-related losses. At the same time § 28–35–58 also requires the proceeds of such recoveries to be used to reimburse the payer of any WCA benefits to prevent double recovery by the employee. We further note in passing that if the employee had obtained a specific-compensation award from the employer before securing a third-party recovery, such an award would have to be repaid to the employer or its insurer out of any subsequent third-party-settlement or judgment proceeds. Although this court has never had occasion to rule on this issue directly, such a result appears to follow inescapably from § 28–35–58's reimbursement provisions.[7]

---

**6.** *See, e.g., Gurliacci v. Mayer,* 218 Conn. 531, 590 A.2d 914, 937 (1991) (finding that dual purpose of statute is to recover from culpable third party and to avoid double recovery); *Enquist v. General Datacom,* 218 Conn. 19, 587 A.2d 1029, 1032 (1991) (holding that employer is entitled to credit against settlement proceeds to reflect continuing liability for future benefits both known and unknown at time of settlement); *Percoco's Case,* 418 Mass. 136, 634 N.E.2d 1385, 1387 (1994) (explaining that future benefits are subject to offset but employer's obligation resumes when excess is consumed); *Caputo v. Best Foods, Inc.,* 39 N.J. 371, 189 A.2d 1, 4 (1963) (concluding that "reparative payments" for postrehabilitation disability are compensation under the statute and subject to offset to avoid double recovery); Wis. Stat. Ann. § 102.29 (employer reimbursed for

past and future payments); *see generally* Arthur Larson, 6 *Workers' Compensation Law* § 74.31(e) n. 38 (1997).

**7.** Although we have uncovered no decisions from other states that directly address postrecovery awards of specific compensation in connection with a statutory set-off mechanism or suspension period similar to ours, other states have held that an employer is generally entitled to reimbursement from a third-party recovery for any specific-compensation awards disbursed prior to a third-party tort recovery. *See, e.g., William H. Pickett, P.C. v. American States Family Insurance Co.,* 857 S.W.2d 309, 312 (Mo.Ct.App.1993) (disfigurement included in subrogation lien), *Beaudoin v. Marchand,* 140 N.H. 269, 665 A.2d 745,

■ In sum we conclude that the panel's treatment of specific-compensation awards granted after the employee has obtained a third-party tort recovery comports with the language of the WCA while also heeding its underlying policies. At the same time the panel's approach has the virtue of not discriminating among specific-compensation awards based upon whether the employee receives them before or after any third-party tort recovery. Accordingly an injured employee who receives a specific-compensation award after his or her recovery of a third-party settlement or judgment is to be immediately credited with a setoff against the excess-settlement proceeds recovered from the third party in the form of a reduction of the suspension period.

As applied to the facts in this case, this credit reduces the $2.5 million of excess settlement proceeds used to calculate the § 28–35–58 suspension period by approximately $53,000—the same result that would obtain in the case of a pre-settlement specific-compensation award. We also note that the immediate vesting of the specific-compensation award in the form of this setoff satisfies in our opinion § 28–33–19's requirement that awards be credited in a one-time lump-sum amount and also heeds § 28–33–24's mandate that "specific compensation * * * payments shall be vested and are not to be divested by any subsequent happening or contingency."

Because of the large settlement amount in this case, it is almost certain that Rison will not outlive the 175–year suspension period. Nonetheless, the amended WCA allows him (and his estate) to retain any remaining excess settlement proceeds, no matter how sizable that sum may prove to be. And although this result is a significant advantage to the employee (recall that in *Travis* the employee was not allowed to recover any WCA benefits after a tort recovery), none of the central policies informing the WCA are offended. Air Filter, in its role as the no-fault-liability vanguard, is made whole for any workers' compensation expenditures it may have been required to advance to Rison. And for his part, Rison is guaranteed financial support during the period of his work incapacity—however long that may prove to be—but he is not allowed to retain any excess-settlement proceeds unless and until Air Filter and/or its insurer have first been made whole.[8]

### D. Scope of Appellate Jurisdiction

Finally, we discern no merit in Rison's remaining contention that the panel decided issues beyond the scope of Air Filter's appeal. The panel stated in its final decree, "The sole issue before the court is an interpretation of the provisions of R.I.G.L. § 28–35–58," and it described the question before it in this manner: "Essentially this ruling revolves around what is the meaning of compensation." We agree with those characterizations. The panel was called upon to interpret § 28–35–58 and to determine how that provision's suspension mechanism applies to the facts of this case. The panel did so, and we perceive no error in its ruling.

### E. Order

Pursuant to our prerogative under § 28–35–36, we frame the following order and remand this matter to the WCC:

746 (1995) (permanent-impairment award included in subrogation lien).

**8.** Our decisions in *Coletta v. State*, 106 R.I. 764, 263 A.2d 681 (1970) and *Benders v. Board of Governors for Higher Education*, 636 A.2d 1313 (R.I.1994), although not inconsistent with our decision today, are inapposite. In *Coletta*, a pre-1985 case, we held that an injured National Guardsman was not barred from seeking specific compensation for loss of an eye from the state workers' compensation system even when he had received his regular Army pay, allowances, and medical and hospitalization expenses from the federal government. *Coletta*, 106 R.I. at 771–72, 263 A.2d at 685. That decision impliedly turned on the fact that the federal benefits in question included no compensation for Coletta's bodily injuries and that he therefore received no double recovery. *Coletta*'s description of specific compensation as "more in the nature of damages for each specific loss," *id.* at 771, 263 A.2d at 685, does not purport to extend beyond the narrow context of that decision and thus it is not at odds with our decision here. For its part, *Benders* held only that the federal Jones Act pre-empts an injured seaman's right to claim state benefits. 636 A.2d at 1315. That decision is wholly inapplicable here.

1. The employee, James Rison III, shall be entitled to an award of specific compensation in the amount of $52,582 for the loss of use of his upper extremities and the disfigurement resulting from his work-related injuries, as provided by § 28–33–19.

2. In lieu of payment, however, the aforementioned specific-compensation award shall be credited against the excess settlement damages according to the provisions of § 28–35–58, thereby reducing the otherwise applicable suspension period by a number of weeks to be determined in accordance with this opinion.

3. Air Filter's liability for future weekly indemnity benefits under § 28–33–17 and its potential liability for all other benefits or compensation to which Rison may be entitled under chapters 29 to 38 of the WCA (except those for which Rison has already received credit or payment) shall continue, subject to all other WCA provisions relating to cessation of benefits upon death or to modification of benefits due to a reduction of his incapacity, provided that Air Filter's liability for future compensation payments shall be suspended for a period to be determined in accordance with this opinion.

### Conclusion

For the reasons set forth above, the employee's petition for certiorari is denied, and the writ heretofore issued is quashed. The decision of the Appellate Division is affirmed and the papers of the case shall be remanded to the WCC with our decision endorsed thereon for such further proceedings as may be necessary to implement this opinion and order.