James **CASALE**

v.

**CITY OF CRANSTON.**

**No. 2010–162–Appeal.**

Supreme Court of Rhode Island.

April 4, 2012.

Hagop S. Jawharjian, Esq., Johnston, for plaintiff.

Christopher M. Rawson, Esq., Providence, for defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

On December 6, 2011, the defendant, City of Cranston (defendant or city), came before the Supreme Court on appeal from a Superior Court judgment in favor of the plaintiff, James Casale (plaintiff or Casale), in an action for declaratory judgment. The defendant argues that the trial justice erred by misinterpreting G.L.1956 § 45–19–1.1, and finding that the city was not entitled to reimbursement from the

proceeds of the plaintiff's uninsured motorist (UM) benefits.[1] We affirm the Superior Court's judgment in favor of the plaintiff.

## Facts and Travel

The material facts of this case are not in dispute. In August 2004, plaintiff was employed as a firefighter for the City of Cranston. While responding to a call, the emergency vehicle that plaintiff was driving was struck by a vehicle negligently operated by an uninsured driver.[2] As a consequence, plaintiff suffered serious injuries that prevented him from carrying out his professional duties for several months. During the period of plaintiff's incapacity, he received $58,768.06 in injured-on-duty (IOD) benefits from the city in accordance with § 45–19–1.[3] The plaintiff also initiated a claim with his insurer, Amica Mutual Insurance Company (Amica), for uninsured motorist benefits; it is that claim that gave rise to this litigation.[4] In accordance with its policy with plaintiff, Amica initially tendered $100,000—minus the $58,768.06 amount that the city paid to plaintiff for IOD benefits, which would leave Casale with $41,231.94.[5] Because the city contended that plaintiff should reimburse it for the IOD payment of $58,768.06, as it claims is required by § 45–19–1.1,[6] plaintiff initiated this declar-

1. This case was consolidated in Superior Court with *Benson v. Cranston*, C.A. No. 07–5640, involving the same issue, and judgment was entered in favor of plaintiffs in both cases. The *Benson* case is not before us.

2. The plaintiff alleged that the uninsured tortfeasor was intoxicated at the time of the collision. The tortfeasor is not a party to this litigation.

3. General Laws 1956 § 45–19–1(a) provides in pertinent part:

   "Whenever any * * * fire fighter * * * is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties or due to their rendering of emergency assistance within the physical boundaries of the state of Rhode Island at any occurrence involving the protection or rescue of human life which necessitates that they respond in a professional capacity when they would normally be considered by their employer to be officially off-duty, the respective city * * * by which the * * * fire fighter * * * is employed, shall, during the period of the incapacity, pay the * * * fire fighter * * * the salary or wage and benefits to which the * * * fire fighter * * * would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period, except that if any city * * * provides the * * * fire fighter * * * with insur-

   ance coverage for the related treatment, services, or equipment, then the city * * * is only obligated to pay the difference between the maximum amount allowable under the insurance coverage and the actual cost of the treatment, service, or equipment."

4. Amica is not a party to this appeal.

5. Casale's policy with Amica insured him for uninsured motorist benefits up to $500,000, but contained specific terms that gave rise to this dispute.

6. Section 45–19–1.1 allows the employee to bring an action against a liable third party for injuries, but requires that the employer be reimbursed out of the proceeds received from the third party:

   "Where the injury or sickness for which compensation is payable under § 45–19–1, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury or sickness, the employee may take proceedings, against that person to recover damages, and the employee is be [*sic*] entitled to receive both damages and compensation; provided, that the employee, in recovering damages either by judgment or settlement from the person liable to pay damages, shall reimburse the city, town, or the state of Rhode Island by whom the compensation was paid to the extent of the compensation paid as of the date of the

atory judgment action seeking a judicial determination that § 45–19–1.1 is inapplicable to his case and that the city is not entitled to reimbursement from any uninsured motorist benefits plaintiff recovers under this insurance policy.

The defendant filed an answer, admitting most of the facts set forth in plaintiff's complaint. The defendant admitted that plaintiff was injured in the course of his employment, that he received IOD benefits in accordance with § 45–19–1, that Amica offered $100,000 in uninsured motorist benefits to plaintiff, and that, in accordance with the policy provisions, Amica would reduce the benefits by the amount paid by the city. The defendant nonetheless asserted that it was entitled to reimbursement in accordance with § 45–19–1.1. The city filed a counterclaim, seeking de-

claratory judgment in favor of its right to reimbursement for the amount of IOD benefits it paid to plaintiff for his injury.

On July 16, 2009, the trial justice issued a written decision, concluding that the city was not entitled to reimbursement. In interpreting § 45–19–1.1, the trial justice found our decision in *Rison v. Air Filter Systems Inc.*, 707 A.2d 675 (R.I.1998), instructive based on similar language contained in G.L.1956 § 28–35–58(a) [7] of the Workers' Compensation Act (the act or WCA), as well as the public policy that underlies the WCA. The trial justice reasoned that this Court "would interpret § 45–19–1.1 to require reimbursement from funds acquired from culpable, third-party tortfeasors, not employees' UM coverage providers." The trial justice concluded that " § 45–19–1.1 provides no right

judgment or settlement, and the receipt of those damages by the employee does not bar future compensation."

7. General Laws 1956 § 28–35–58(a), entitled "Liability of third person for damages," provides:

"Where the injury for which compensation is payable under chapters 29–38 of this title was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect of the injury, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under those chapters for that compensation, and the employee shall be entitled to receive both damages and compensation. The employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of those damages by the employee shall not bar future compensation. An insurer shall be entitled to suspend the payment of compensation benefits payable to the employee when the damages recovered by judgment or settlement from the person so liable to pay damages exceeds the compensation paid as of the date of the judgment or settlement. The suspension paid shall be that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate; however, during the period of suspension the employee shall be entitled to receive the benefit of all medical and hospital payments on his or her behalf. If the employee has been paid compensation under those chapters, the person by whom the compensation was paid shall be entitled to indemnity from the person liable to pay damages, and to the extent of that indemnity shall be subrogated to the rights of the employee to recover those damages. When money has been recovered either by judgment or by settlement by an employee from the person liable to pay damages, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his or her attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party."

to reimbursement from any proceeds the [e]mployees have received or may receive from their respective UM coverages," and that reimbursement can be obtained from those employees "who received IOD benefits, only if they recovered damages from a responsible third party * * *." Accordingly, the trial justice found in favor of plaintiff. The defendant appealed.

## Standard of Review

■■■ "With respect to a trial justice's decision to grant or deny declaratory relief, 'our standard of review is deferential.'" *D'Ellena v. Town of East Greenwich,* 21 A.3d 389, 391 (R.I.2011) (quoting *Grady v. Narragansett Electric Co.,* 962 A.2d 34, 41 (R.I.2009)). The decision will not be interfered with on appeal "unless the court improperly exercised its discretion or otherwise abused its authority." *Sullivan v. Chafee,* 703 A.2d 748, 751 (R.I. 1997) (citing *Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee,* 694 A.2d 727, 729 (R.I. 1997)). We therefore review the trial justice's decision "with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." *Id.* at 751.

■■ However, we review questions of statutory construction *de novo. Iselin v. Retirement Board of the Employees' Retirement System of Rhode Island,* 943 A.2d 1045, 1049 (R.I.2008) (citing *Webster v. Perrotta,* 774 A.2d 68, 75 (R.I.2001)). We consistently have held that when a statute contains clear and unambiguous language, this Court interprets the statute literally and gives the words their plain and ordinary meanings. *Id.* (citing *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)).

## Analysis

■■ Before this Court, the city argues that the trial justice erred by misinterpreting § 45–19–1.1 and granting plaintiff declaratory relief. According to defendant, plaintiffs uninsured motorist coverage requires the insurer to step into the shoes of the tortfeasor and pay the insured the damages that he is legally entitled to recover from the third-party owner or operator of an uninsured vehicle.[8] Thus, defendant argues that the insurer should be viewed as "the person liable to pay damages" under § 45–19–1.1, and that the city should be reimbursed from the payments the insured received from the insurance company in the same manner as if the payment was made by the tortfeasor. We disagree.

The defendant relies on two cases concerning reimbursement by an injured-on-duty police officer to support its contention that the city should be reimbursed by Casale. *See Manzotti v. Amica Mutual Insurance Co.,* 695 A.2d 1001 (R.I.1997) (*Manzotti II*); *Manzotti v. Amica Mutual Insurance Co.,* 656 A.2d 625 (R.I.1995) (mem.) (*Manzotti I*). The city interprets our holding in *Manzotti II* as mandating that, pursuant to § 45–19–1.1, the injured-on-duty Providence police officer in that case was required to reimburse the City of Providence for the IOD benefits it had paid to him from the underinsured benefits he received from his personal Arnica motor vehicle policy. The defendant further asserts that the only difference between our decision in *Manzotti II* and this case is that Casale has a claim for uninsured cov-

---

8. We pause to note that neither the terms of the insurance policy, nor the insurer, presently are before us.

erage, while *Manzotti II* involved a claim for underinsured coverage.

The city's reliance on the *Manzotti* decisions is misplaced. In *Manzotti I*, the injured officer suffered damages equivalent to $80,000; the City of Providence provided him with $22,400 in IOD benefits, and he received $50,000 from the tortfeasor's insurer. *Manzotti I*, 656 A.2d at 626. He failed to reimburse the city in accordance with § 45–19–1.1. In *Manzotti II*, Manzotti and Arnica, his uninsured carrier, argued that the city was not entitled to any reimbursement because Providence had failed to comply with the statutory liens procedurally set forth in § 45–19–1.3.[9] *Manzotti II*, 695 A.2d at 1003. We concluded that,

> "Manzotti * * * is required by the statute to reimburse the city regardless of whether the city has complied with the statutory lien provisions in order to enforce its lien against a third party. The city's right to reimbursement from Manzotti is not dependent upon the existence of a written notice of statutory lien against him but is instead clearly provided to the city by § 45–19–1.1." *Manzotti II*, 695 A.2d at 1003–04.

Although in *Manzotti II* we held unequivocally that the city had a right to reimbursement whether or not the lien was perfected, that case is distinguishable from the case before us because Manzotti had, in fact, recovered a sum from the *tortfeasor*, thereby implicating § 45–19–1.1. *See*

*Manzotti II*, 695 A.2d at 1003. As such, we declared that the City of Providence should have been reimbursed from the tortfeasor's policy for the amount Manzotti received in IOD payments. *Id.* The trial justice aptly noted that in *Manzotti II* the court "ordered reimbursement only after the police officer had recovered $50,000 from the tortfeasor's insurer, making it possible for the police officer to reimburse the city from those funds," and that "[s]uch an 'equitable remedy' would be consistent with this Court's interpretation of § 45–19–1.1." Conversely, in this case, Casale did not recover any of his damages from the tortfeasor, and only was able to recover UM benefits based on his contract with Arnica, which specifically provides for a reduction of IOD benefits Casale received during his period of incapacity. He did not recover twice, as did Manzotti.

The defendant also cites to *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 40 (R.I. 1989), to support its contention that the government has a right to obtain reimbursement from injured on-the-job public safety employees, for damages recovered from a legally liable third party. The defendant argues that Arnica is liable because Casale received damages as a direct and proximate result of the negligence of a third party, uninsured motorist, and that under the UM policy, Arnica steps into the shoes of the tortfeasor and pays the compensatory damages that Casale is legally entitled to recover. Although we recognize that *Mignone*, 556 A.2d at 40, pro-

9. Section 45–19–1.3 sets forth:
   "No lien is effective, unless a written notice containing the name and address of the employee, the date that the employee became wholly or partially incapacitated, the name and location of the employer, and the name of the person or persons, firm or firms, corporation or corporations, alleged to be liable to the employee for the injuries received or sickness contracted, is filed in the office of the city or town clerk, if the employer is a municipality, or the office of the department of administration, if the employer is the state of Rhode Island prior to the payment of any moneys to the employee, or the employee's attorneys or legal representatives as compensation for the injuries or sickness. The employer shall mail a copy of the notice to any insurance carrier which has insured the person, firm, or corporation against the liability."

vides a public institution with a right to obtain reimbursement, we are not convinced that it permits recovery from the insurance proceeds received by an employee under his UM coverage. We note that *Mignone* did not implicate insurance proceeds, nor did it involve a claim by Mignone's municipal employer for reimbursement under § 45–19–1.1. *See generally Mignone v. Fieldcrest Mills,* 556 A.2d 35 (R.I.1989). Accordingly, defendant's reliance on *Mignone* is unavailing.

In the trial justice's carefully crafted decision, he discussed the policy behind the WCA that is similar to § 45–19–1.1, and that was analyzed in *Rison.* The act, using language comparable to § 45–19–1.1, provides that if a third party is liable for an employee's injuries, the employee may bring an action against that party, but the employee must then reimburse the party who paid the worker's compensation benefits from the proceeds of that action. Section 28–35–58. We concluded in *Rison* that the goal of § 28–35–58 is "to permit injured workers to recover tort damages from third parties while preserving their employers' potential workers' compensation liability as security against a deficient tort recovery and, at the same time, guarding against any double recovery or windfall to the injured employee." *Rison,* 707 A.2d at 683. We also declared that, "although the WCA creates no-fault liability on the employer's part to benefit and protect the employee, it also reflects a policy judgment that, whenever possible, any culpable tortfeasor(s) should bear the ultimate financial burden for the employee's injuries." *Id.* Included in that policy judgment is a prohibition against a double recovery by the injured employee.[10] *Id.* at 682. In this case, there is no danger of a double recovery because, in accordance with the terms of Arnica's UM policy, Casale only is entitled to receive the difference between the IOD benefits and the total amount of damages.

To make Casale whole, the amount Amica will pay equals the difference between the total amount of damages plaintiff suffered and the amount of IOD benefits he received. Unlike *Manzotti I,* plaintiff will not receive a double recovery because his recovery from Amica already is reduced by the amount of IOD benefits paid by defendant.[11] According to the record on appeal, the setoff clause contained in Casale's contract with Amica allows only for compensation of the full amount less the IOD payments, thus preventing a windfall to plaintiff. Conversely, if we were to accept defendant's argument that plaintiff must reimburse the city, plaintiff would not receive the benefit of his insurance policy; he would not be made whole, but effectively would pay twice. Therefore, we are satisfied that plaintiff is not required to

---

**10.** We pause to note that in the workers' compensation context, § 28–35–58 provides that in cases in which the employee recovers damages in excess of the benefits he or she has recovered from the employer's insurer, yet remains disabled, the insurer may suspend the payment of future benefits as of the date of the judgment and continuing for "that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate * * *." *See, e.g., McCarthy v. Environmental Transportation Services, Inc.,* 865 A.2d 1056 (R.I.2005). Section 45–19–1.1 does not contain a similar provision; it merely provides that "the receipt of [tort] damages by the employee does not bar future compensation."

**11.** The trial justice also made reference to the concern for double recovery in *Manzotti v. Amica Mutual Insurance Co.,* 656 A.2d 625, 626 (R.I.1995) (mem.) (*Manzotti I*), and noted that no such concern existed in Casale's case because Amica reduced its tender by $58,768.06, based on the IOD payments made. We agree.

reimburse defendant from his UM proceeds.

We are of the opinion that the trial justice did not abuse his discretion and that he correctly held that the defendant is not entitled to reimbursement for the IOD payments paid to the plaintiff. Because the plaintiff did not collect any money from the tortfeasor, § 45–19–1.1 is of no assistance to the defendant.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.